# United States Court of Appeals
## For the First Circuit

No. 15-1340

STEVEN C. FUSTOLO,

Plaintiff, Appellant,

v.

50 THOMAS PATTON DRIVE, LLC; THE PATRIOT GROUP LLC;
RICHARD MAYER,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Torruella, Lynch,[*] and Kayatta,
Circuit Judges.

David M. Nickless, with whom Nickless, Phillips and O'Connor,
was on brief for appellant.
Michael J. Fencer, with whom Howard P. Blatchford, Jonathan
M. Horne, and Jager Smith P.C., were on brief, for appellees 50
Thomas Patton Drive, LLC, and Richard Mayer.
Colleen C. Cook, with whom Michael Paris, Jack I. Siegal, and
Nystrom Beckman & Paris LLP, were on brief, for appellee The
Patriot Group LLC.

---

[*]    Judge Lynch heard oral argument in this matter and
participated in the semble, but she did not participate in the
issuance of the panel's opinion.  The remaining two panelists issue
this opinion pursuant to 28 U.S.C. § 46(d).

February 24, 2016

**KAYATTA**, **Circuit Judge**.  We hold in this case that a claim to payment that 50 Thomas Patton Drive, LLC ("Patton Drive") holds against Steven Fustolo ("Fustolo") "is not contingent as to liability or the subject of a bona fide dispute as to liability or amount" within the meaning of section 303(b)(1) of the Bankruptcy Code.  11 U.S.C. § 303(b)(1).  We therefore affirm the decision of the bankruptcy court, which found Patton Drive qualified to join with two other creditors also holding non-contingent, undisputed claims to force Fustolo into an involuntary bankruptcy proceeding.

## I.

Patton Drive's claims against Fustolo arise out of four promissory notes issued to Patton Drive by Fustolo's affiliate companies in connection with two real estate transactions.  Fustolo personally guaranteed two of the notes (the "Guaranteed Notes"), which together totaled $1.25 million, but did not guarantee the other two notes (the "Unguaranteed Notes"), which together totaled $1.5 million.  When the principal debtors defaulted on all four notes, Patton Drive sued the debtor companies and Fustolo, asserting that Fustolo was personally liable on his guarantee.  The Massachusetts state court found Fustolo liable for breach of contract and rejected Fustolo's argument that Patton Drive's technical violation of a state usury statute should reduce the amount of interest owed on the notes.  The court entered a final judgment against Fustolo in favor of Patton Drive in the amount of

roughly $6.76 million.[1] Fustolo contends that this judgment overstated his liability by approximately $4 million because it erroneously assumed that he had guaranteed all of the notes. In response, Patton Drive demurs, declining to offer any defense of the state court's damages calculation. Fustolo lodged a timely appeal of the state court judgment but did nothing further to prosecute the appeal, which we are told has rested more or less dormant on the state court's appellate docket for at least four years.

Meanwhile, Fustolo, who admittedly has at least twelve creditors, failed to satisfy his financial obligations to at least two of those other creditors, The Patriot Group LLC ("Patriot") and Richard Mayer ("Mayer"). On May 6, 2013, eighteen months after entry of the state court judgment, Patton Drive joined with Patriot and Mayer to file a petition with the United States Bankruptcy Court, seeking to place Fustolo into involuntary Chapter 7 bankruptcy, and to thereby cause Fustolo's debts to be determined

---

[1] The court also found, inter alia, that Fustolo and his affiliates had violated a state statute by engaging in unfair and deceptive business practices. See Mass. Gen. Laws ch. 93A, §§ 2, 11. The parties dispute whether Fustolo was assigned any independent monetary liability for this violation, but it is undisputed that the judgment held all defendants jointly and severally liable for attorneys' fees and costs as to this and other counts.

and his assets gathered and liquidated in an orderly fashion to satisfy those debts.  See 11 U.S.C. §§ 303(b)(1), 701 et seq.

The creditors' ability to force Fustolo into bankruptcy rests on 11 U.S.C. § 303(b)(1), which provides that involuntary bankruptcy proceedings may be commenced via petition to the bankruptcy court

> by three or more entities, each of which is . . . a holder of a claim against [the debtor] that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount . . . if such noncontingent, undisputed claims aggregate at least [$14,425] more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

11 U.S.C. § 303(b)(1); see also id. § 104(a). Fustolo does not dispute that Patriot and Mayer hold eligible claims against him. Nor does Fustolo dispute that the total amount of those undisputed claims exceeds the value of any related liens on his property by the statutorily requisite amount.  However, Fustolo maintains that Patton Drive has not asserted a claim that qualifies it to serve as a petitioning creditor because his pending state court appeal subjects Patton Drive's judgment to "bona fide dispute as to liability or amount."  Id. § 303(b)(1).

Following an evidentiary hearing in the bankruptcy court on Fustolo's challenge to their qualifications to initiate an involuntary proceeding, the three petitioning creditors moved for summary judgment.  Fustolo opposed the motion and filed his own

cross-motion for summary judgment. On December 16, 2013, the bankruptcy court granted summary judgment to the petitioning creditors, thus authorizing involuntary bankruptcy proceedings to commence against Fustolo.

In assessing whether Patton Drive's state court judgment constituted a qualifying claim despite Fustolo's appeal, the bankruptcy court employed the approach approved by the Fourth Circuit in In re Byrd, 357 F.3d 433 (4th Cir. 2004). Under this approach, the court did not accord the state court judgment against Fustolo dispositive force in establishing the absence of a bona fide dispute concerning the right to payment recognized and affirmed in that judgment. Instead, the court began with a presumption that the judgment foreclosed any bona fide dispute, but then proceeded to assess the merits of Fustolo's pending state court appeal to determine whether Fustolo's case "exemplifie[d] the rare circumstance where the amount of the judgment is in bona fide dispute." Upon examination, the court found a bona fide dispute as to the portion of the judgment that awarded damages against Fustolo on the Unguaranteed Notes because, among other things, Patton Drive did not oppose the contention that it had no right to recover against Fustolo on those notes. At the same time, the bankruptcy court separately assessed Patton Drive's right to payment on the portion of the state court judgment that covered Fustolo's breach of contract on the Guaranteed Notes. Finding

this portion of the judgment free of bona fide dispute, the bankruptcy court granted summary judgment to Fustolo's creditors and denied Fustolo's cross-motion.

Fustolo then appealed to the district court and found himself jumping from the frying pan into the fire. The district court eschewed the Fourth Circuit's merits-based analysis of the preclusive effect of an appealed state court judgment, opting instead for the approach announced in In re Drexler, 56 B.R. 960 (Bankr. S.D.N.Y. 1986), and adopted by the only other circuit court to have decided this issue, see In re Marciano, 708 F.3d 1123, 1124 (9th Cir. 2013). Under the so-called Drexler rule, an unstayed state court judgment, whether or not subject to appeal, per se constitutes a claim that is not subject to bona fide dispute. See Drexler, 56 B.R. at 967. Therefore finding that Fustolo's appeal in state court, however meritorious, could not raise a bona fide dispute as to Patton Drive's claim, the district court affirmed the bankruptcy court's order.

Fustolo now appeals to this court pursuant to 28 U.S.C. § 158(d)(1),[2] urging us, first, to reject the district court's

---

[2] Although no party addresses whether a bankruptcy court's order for relief in favor of a petitioning creditor in an involuntary suit is the sort of final order over which this court has appellate jurisdiction, we follow our sister circuits in finding no apparent impediment. See In re HealthTrio, Inc., 653 F.3d 1154, 1160 (10th Cir. 2011); In re McGinnis, 296 F.3d 730, 731 (8th Cir. 2002) (per curiam); In re Mason, 709 F.2d 1313, 1315–18 (9th Cir. 1983); see also Bullard v. Blue Hills Bank, 135 S.

decision to apply <u>Drexler</u>'s categorical rule and, second, to reject the bankruptcy court's determination that, even under <u>Byrd</u>'s more debtor-friendly burden-shifting rule, Patton Drive qualifies as a petitioning creditor because it holds a claim on the Guaranteed Notes that is free of bona fide dispute.  For slightly different reasons, we affirm.

## II.

### A.

In bankruptcy proceedings, summary judgment is appropriate when the movant has shown that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a).  We review the bankruptcy court's grant of summary judgment de novo.  <u>In re Colarusso</u>, 382 F.3d 51, 57-58 (1st Cir. 2004).  In undertaking this review, we afford no deference to the district court's intermediate decision.  <u>In re Healthco Int'l, Inc.</u>, 132 F.3d 104, 107 (1st Cir. 1997).

### B.

We begin with the creditors' argument that we can easily resolve this appeal by adopting the district court's conclusion that the <u>Drexler</u> rule applies and that Patton Drive's claim is

---

Ct. 1686, 1695 (2015) (suggesting that a bankruptcy court order that "allows the bankruptcy to go forward and alters the legal relationships among the parties" is appealable).

therefore categorically free from bona fide dispute. If the creditors are correct on this point, we need not--and indeed cannot--look behind the state court judgment to assess its merits. On the facts of this case, however, we cannot hold that the Drexler rule applies.

The Drexler rule, followed by the Ninth Circuit, see Marciano, 708 F.3d at 1124, has much to commend it. It is simple to apply, and it reduces the waste of assets inherent in opening the opportunity for a financially troubled party to argue the merits of issues previously adjudicated in state court. It also arguably accords to a state court judgment the sort of respect and finality reflected in the Full Faith and Credit Act, which requires that federal courts give state court judgments "the same full faith and credit . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738; see also Marciano, 708 F.3d at 1128.[3]

---

[3] The creditors take this observation one step further and argue that 28 U.S.C. § 1738 fully estops Fustolo from arguing the existence of a bona fide dispute as to the state court judgment in light of the fact that, under Massachusetts law, "a trial court judgment is final and has preclusive effect regardless of the fact that it is on appeal." O'Brien v. Hanover Ins. Co., 692 N.E.2d 39, 44 (Mass. 1998). Fustolo, though, does not ask us in this litigation to reject the fact or legal effect of the state court judgment. Rather, he seeks only to establish that the amount of his liability is subject to bona fide dispute. See Marciano, 708 F.3d at 1134 (Ikuta, J., dissenting) ("[D]etermining whether a claim based on a state court judgment is subject to a bona fide dispute does not require us to [decide anew] any issue [already] decided in a state court proceeding."). And we have found no

- 9 -

More importantly, the Drexler rule fits with Congress's apparent purpose in requiring each claim underlying an involuntary petition to be free of "bona fide dispute." In usual course, bankruptcy serves as a haven for debtors seeking protection from creditors and hoping to make a fresh start. See In re Fahey, 779 F.3d 1, 8-9 (1st Cir. 2015). But the Bankruptcy Code also serves another, "often conflicting," purpose: to "ensure fair payment to creditors." In re Energy Res. Co., 871 F.2d 223, 230 (1st Cir. 1989). Section 303 of the Bankruptcy Code thus allows creditors who satisfy certain conditions to force a debtor into bankruptcy, so that the disposition of the debtor's assets can proceed in a more orderly fashion.

The requirement that the petitioning creditors' claims be free of bona fide dispute was added by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, § 426(b), 98 Stat. 333, 369. The Bankruptcy Code does not define the term "bona fide dispute," but courts have more or less settled on finding a bona fide dispute when "there is either a genuine issue of material fact that bears upon the debtor's liability or a meritorious contention as to the application of law to undisputed facts." In re BDC 56 LLC, 330 F.3d 111, 117 (2d Cir. 2003) (citing

---

Massachusetts precedent suggesting that the existence of a judgment estops a litigant from arguing that the judgment is persuasively contested.

cases), abrogated on other grounds as recognized in In re Zarnel, 619 F.3d 156, 169 (2d Cir. 2010). The self-evident purpose of the "no bona fide dispute" requirement, as courts have repeatedly recognized, is "to prevent creditors from using involuntary bankruptcy 'to coerce a debtor to satisfy a judgment even when substantial questions may remain concerning the liability of the debtor.'" Byrd, 357 F.3d at 438 (quoting In re Prisuta, 121 B.R. 474, 476 (Bankr. W.D. Pa. 1990)); see also BDC 56 LLC, 330 F.3d at 117–18; In re Tikijian, 76 B.R. 304, 313–14 (Bankr. S.D.N.Y. 1987) ("It was stated by the proponent of the [1984] amendment . . . that the primary purpose of the addition of the bona fide dispute language was to prevent creditors from using involuntary bankruptcy as a club to coerce a debtor to pay debts as to which the debtor, in good faith, had legitimate defenses."). With that purpose in mind, courts generally try to determine whether, objectively, there is a dispute about a debt that reasonably warrants resolution by a factfinder or, in the case of a dispute of law, a court. See In re Busick, 831 F.2d 745, 750 (7th Cir. 1987) ("[T]he bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of debt."). When such a dispute exists, we do not allow the creditor to coerce the debtor's surrender by credibly threatening to use the claim as a basis for an involuntary petition.

But when the creditor already holds a state court judgment upon which execution is possible, allowing the creditor to join in forcing a bankruptcy proceeding adds little material weight to the creditor's ability to coerce payment of the debt. The absence of a stay also undercuts the debtor's ability to argue that the state courts view the debt as not quite collectable. Consistent with these reasons, the Drexler rule applies only to "unstayed" state court judgments--those judgments that actually entitle a creditor to access the debtor's assets. Drexler, 56 B.R. at 967 n.11; see also, e.g., In re Raymark Indus., Inc., 99 B.R. 298, 299-300 (Bankr. E.D. Pa. 1989).

Turning to the instant case, a Massachusetts trial court's judgment is effectively stayed by operation of state law for the purposes of execution, even absent a court order, while an appeal is pending. See Mass. Gen. Laws ch. 231, § 115; id. ch. 235, § 16; Mass. R. Civ. P. 62(a). Thus, Patton Drive could not execute in Massachusetts courts on its judgment. See, e.g., C.F. Tr., Inc. v. Peterson, No. 961375H, 1998 WL 1284163, at *2-3 (Mass. Super. Ct. May 21, 1998) (refusing execution on a confessed judgment on a promissory note pending debtors' appeal).[4]

---

[4] The creditors have offered no argument that Massachusetts law provides an equitable exception for appeals that have stagnated as long as Fustolo's has, and so we consider any such argument waived without fully foreclosing the possible existence of a state law exception. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

The courts below treated this wrinkle as inconsequential in light of the fact that Massachusetts law does not automatically stay the other legal effects of a judgment pending appeal. In particular, the courts below held that Patton Drive's state court judgment is unstayed because of the availability of postjudgment discovery and attachment under Massachusetts law regardless of a pending appeal. See A.W. Farrell Assocs., LLP v. Haddon, No. 07-P-596, 2008 WL 4130828, at *3-4 (Mass. App. Ct. Sept. 9, 2008) (unpublished opinion) (discovery); Borne v. Haverhill Golf & Country Club, 791 N.E.2d 903, 919 (Mass. App. Ct. 2003) (attachment). But these tools would have been available to Patton Drive even prior to the judgment that fixed its rights. See Mass. R. Civ. P. 4.1 (prejudgment attachment); id. 26 (discovery). And the fact that a trial court's judgment is stayed in some senses under Massachusetts law pending appeal, while remaining unstayed in others, does not by itself tell us whether the judgment is stayed or unstayed for the purposes of the Drexler rule.

We are not persuaded that a judgment is unstayed for bankruptcy purposes merely because that judgment continues to have some legal effects despite a creditor's legal inability to execute. The Bankruptcy Code defines a "claim" as, in relevant part, a "right to payment." 11 U.S.C. § 101(5)(A) (emphasis supplied). And in construing the requirement that such a claim be free from bona fide dispute, courts applying the Drexler rule have focused

not on the abstract existence of a legal right, but rather on the claim-holder's ability to vindicate that right in court. See, e.g., Marciano, 708 F.3d at 1127 (no bona fide dispute when "Petitioning Creditors were free under California law to collect the amounts owed under the judgments at the time the involuntary petition was filed" (emphasis supplied)); id. at 1131 (Ikuta, J., dissenting) ("The majority's reasoning seems to be that . . . because an unstayed state court judgment is immediately enforceable, there can be no objective basis for dispute as to the 'claim's' liability or amount." (emphasis supplied)); Drexler, 56 B.R. at 967 (unstayed state court judgment not subject to bona fide dispute because a contrary holding would "effect a radical alteration of[] the long-standing enforceability of unstayed final judgments" (emphasis supplied)).  Because the ability to execute on a state court judgment provides a crucial link in the rationale that justifies the bright line, automatic nature of the Drexler rule, we find that rule inapplicable when, as here, execution on the judgment is stayed, even if only by automatic operation of state law.[5]  Patton Drive's state court judgment is therefore not categorically insulated from bona fide dispute.

---

[5] We leave open the question of whether the Drexler rule would apply in the event of an unstayed state court judgment that has been appealed.

## c.

Even though a state court judgment does not necessarily establish the absence of bona fide dispute when that judgment is effectively stayed, the judgment must nevertheless play some role in our analysis. The fact that a state court has already considered and adjudicated the merits of a claim, and entered judgment on the claim, weighs heavily in favor of finding the claim beyond bona fide dispute. See Byrd, 357 F.3d at 438 (state court judgments were "strong evidence that [the creditor's] claims were valid"). This observation is particularly salient where the judgment is stayed by virtue of the automatic operation of state law and not because a state court has probed the merits of the judgment and found reason to suspect that it may be incorrect.

But despite the weight we would normally attach to a state court judgment, here we have a judgment that appears on its face to be in error because it holds Fustolo personally liable for roughly $4 million on the Unguaranteed Notes and, notably, Patton Drive as the holder of the judgment offers no reason at all to think otherwise. As the bankruptcy court recognized, Patton Drive's de facto concession on this point certainly creates a bona fide dispute as to the amount of Patton Drive's right to payment on the judgment.

As Patton Drive points out, however, the dispute over the judgment concerns only a portion of the judgment. Fustolo

- 15 -

makes no real effort to deny that he owes, at least, the principal due under the Guaranteed Notes, which totals $1.25 million.[6] Based on this concession, Patton Drive asks us to rule that any dispute concerning the amount of the liability represented by the judgment can be ignored, because the amount admittedly owed well exceeds the amount necessary to justify Patton Drive's joinder as a petitioning creditor under 11 U.S.C. § 303(b)(1).

In making this argument, the creditors essentially ask us to read an implicit materiality requirement into the statutory language "bona fide dispute as to liability or amount." 11 U.S.C. § 303(b)(1). Prior to 2005, some courts had held--as the bankruptcy court held here--that a claim to a disputed amount could nevertheless form the basis of an involuntary petition if the undisputed portion of the claim could independently qualify the creditor. See, e.g., In re Focus Media, Inc., 378 F.3d 916, 925–27 (9th Cir. 2004); BDC 56 LLC, 330 F.3d at 120; IBM Credit Corp. v. Compuhouse Sys., Inc., 179 B.R. 474, 479 (W.D. Pa. 1995); In re Willow Lake Partners II, L.P., 156 B.R. 638, 642–43 (Bankr. W.D.

---

[6] Fustolo makes a fleeting intimation in his brief that, under Begelfer v. Najarian, 409 N.E.2d 167 (Mass. 1980), Patton Drive's failure to comply with state usury law should relieve him of his debt even on the Guaranteed Notes' unpaid principal, see id. at 173–74. But Fustolo supplies this court with no developed reason to entertain such a farfetched argument, and so any effort to claim that Fustolo's liability on the Guaranteed Notes' principal is subject to bona fide dispute is waived for lack of development. See Zannino, 895 F.2d at 17.

Mo. 1993). In 2005, however, Congress amended section 303 to add the language "as to liability or amount." Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1234, 119 Stat. 23, 204. Faced with a dearth of clarifying legislative history, courts are more or less evenly split on whether the 2005 amendment was intended to change the prevailing law by establishing that "a dispute as to any portion of a claim, even if some dollar amount would be left undisputed, means there is a bona fide dispute as to the amount of the claim," In re Vicor Techs., Inc., No. 12-39329, 2013 WL 1397460, at *5 (Bankr. S.D. Fla. Apr. 5, 2013), or simply to reinforce the then-prevailing interpretation, see In re DemirCo Holdings, Inc., No. 06-70122, 2006 WL 1663237, at *3 (Bankr. C.D. Ill. June 9, 2006) (a dispute as to amount is immaterial unless it "ha[s] the potential to reduce the total of [the petitioning creditors'] claims to an amount below the statutory threshold.").[7]

_____

[7] Compare, e.g., Vicor, 2013 WL 1397460, at *5; In re Skyworks Ventures, Inc., 431 B.R. 573, 578 n.1 (Bankr. D.N.J. 2010); In re Rosenberg, 414 B.R. 826, 845–46 (Bankr. S.D. Fla. 2009); In re Excavation, Etc. LLC, No. 09-60953, 2009 WL 1871682, at *2 (Bankr. D. Or. June 24, 2009); In re Metro Cremo & Sons, Inc., No. 1:08-bk-01798, 2008 WL 5158288, at *4 n.8 (M.D. Pa. Sept. 29, 2008); In re Mountain Dairies, Inc., 372 B.R. 623, 634 (Bankr. S.D.N.Y. 2007); In re Reg'l Anesthesia Assocs. PC, 360 B.R. 466, 469–70 (Bankr. W.D. Pa. 2007); In re Euro-Am. Lodging Corp., 357 B.R. 700, 712 n.8 (Bankr. S.D.N.Y. 2007) (no materiality requirement), with, e.g., In re Stewart, Nos. 14-03177, 14-03179, 2015 WL 1282971, at *6 (Bankr. S.D. Ala. Mar. 18, 2015); In re EM Equip., LLC, 504 B.R. 8, 18 (Bankr. D. Conn. 2013); In re Roselli, No. 12-32461, 2013 WL 828304, at *9 (Bankr. W.D.N.C. Mar. 6, 2013); In re

We decline to read a materiality requirement into section 303.  As discussed above, the bona fide dispute provision strikes a balance between the Bankruptcy Code's dual purposes of ensuring the orderly disposition of creditors' claims and protecting debtors from coercive tactics.  See supra Part II.B.  Limiting petitioning creditors to only those claims that are of undisputed value is in line with those aims.  Accordingly, and in the absence of persuasive contrary authority or illuminating legislative history, we follow the straightforward reading of section 303, which places no qualifiers on the requirement that any asserted claim be free of "bona fide dispute as to . . . amount."

**D.**

Our conclusions that this judgment upon which execution is stayed under Massachusetts law is not categorically insulated from bona fide dispute, that there exists a bona fide dispute as to the amount that will ultimately be due under the judgment, and that a dispute as to amount need not be material to generate a disqualifying bona fide dispute under 11 U.S.C. § 303(b)(1), bring us to Patton Drive's last, two-part argument:  First, Patton Drive

Miller, 489 B.R. 74, 82–83 (Bankr. E.D. Tenn. 2013); In re Mountain Country Partners, LLC, No. 12-20094, 2012 WL 2394714, at *3 (Bankr. S.D. W. Va. June 25, 2012); In re Tucker, No. 5:09-bk-914, 2010 WL 4823917, at *6 (Bankr. N.D. W. Va. Nov. 22, 2010); DemirCo, 2006 WL 1663237, at *3 (requiring materiality).

contends that we should look beneath the state court judgment to the underlying contract claims that gave rise to the judgment and treat its right to payment on the Guaranteed Notes as its qualifying claim. Second, Patton Drive asks us to find that Fustolo's efforts to contest the interest due on the Guaranteed Notes do not suffice to subject its claim on those notes to bona fide dispute as to amount. We address these arguments in turn.

**1.**

To consider the claim on the Guaranteed Notes as the claim held by Patton Drive that qualifies it as a petitioner under section 303(b)(1), we first confront Fustolo's contention that Patton Drive's claim on the Guaranteed Notes no longer exists because it merged into and became part of the state court judgment. Hence, in Fustolo's view, our conclusion that the judgment itself is subject to a bona fide dispute ends the relevant inquiry. We do not doubt that a merger of this type can occur. See Restatement (Second) of Judgments § 18, cmt. a ("When the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it."). But we also see no reason to view such a merger as operative in all contexts. Cf. Boynton v. Ball, 121 U.S. 457, 466 (1887) ("[N]otwithstanding the change in [a debt's] form from that of a simple contract debt . . . by merger into a judgment of a court of record, it still remains the same debt[.]"); In re Richard A.

Turner Co., 209 B.R. 177, 180 (Bankr. D. Mass. 1997) (separating a single, jointly held judgment into its three underlying component claims and so finding that the judgment-holders qualified as petitioning creditors). Here, for instance, Fustolo should not be allowed to argue, on the one hand, that the judgment is not final for purposes of establishing that Patton Drive's claim on the judgment is subject to bona fide dispute, yet argue, on the other hand, that we should treat the judgment as final for purposes of displacing the underlying contract claims. Once we have already, to Fustolo's advantage, looked beneath the surface of the state court judgment in order to identify its vulnerable components, we see no principled reason to then ignore what is, but for the potential operation of merger, an independent claim capable of standing on its own merits.

Alternatively, Fustolo argues that even if Patton Drive could have asserted only its claim under the Guaranteed Notes as its qualifying claim in the petition, it did not do so. Rather, the involuntary bankruptcy petition asserts as Patton Drive's claim the entire state court judgment. This is true. But Fustolo concededly knew from the start that the liability represented by the judgment consisted of two separate components, one of which was the liability under the Guaranteed Notes. Indeed, in Fustolo's initial answer to the involuntary petition, Fustolo contested the state court's calculation of the amount of interest due on the

Guaranteed Notes specifically, and Fustolo has continued to raise this argument throughout the litigation. Patton Drive's memorandum in support of summary judgment before the bankruptcy court, in turn, made clear that Patton Drive understood the state court judgment to "encompass[] . . . separate damages components," one of which was Fustolo's liability on the Guaranteed Notes. Fustolo gives us no reason to think that his strategy would have changed had Patton Drive asserted only its claim under the Guaranteed Notes from the outset.

Certainly, Patton Drive could have sought to formally amend the claim it asserted in its involuntary petition. See Fed. R. Bankr. P. 7015; see also id. 1018; Fed. R. Civ. P. 15. But given that Patton Drive had no way of knowing how the bankruptcy court would rule on the preclusive effect of the state court judgment or on the issue of merger, and given that Fustolo's liability on the Guaranteed Notes formed an obvious, separately calculated amount within the asserted claim, we cannot fault Patton Drive for failing to do so. Accordingly, we hold that a petitioning creditor may be permitted to rely on an undisputed component claim that underlies a disputed multi-part judgment that the creditor has asserted as its qualifying claim, where the amount of that undisputed claim is clearly severable from the amount of the total judgment and where the debtor both has notice of that reliance and is not prejudiced by that reliance. See In re

Cumberland Farms, Inc., 284 F.3d 216, 226 (1st Cir. 2002) ("Under the liberal pleading regime prescribed by the Federal Rules of Civil Procedure, non-compliance with . . . procedural rules does not always preclude consideration of unpleaded claims . . . .").

**2.**

Our decision that neither merger of the claim on the Guaranteed Notes into the judgment nor Patton Drive's assertion of the state court judgment in the petition precludes Patton Drive from relying only on the claim under the Guaranteed Notes to qualify it as a petitioning creditor brings us to the second part of Patton Drive's two-part argument: whether the claim under the Guaranteed Notes is indeed free of bona fide dispute. Fustolo argues that the $2.7 million due on the Guaranteed Notes is disputed as to amount, claiming that Patton Drive is not entitled to the Guaranteed Notes' full default interest rate of 35% because Patton Drive failed to timely submit a required "usury notification form" to the state attorney general before levying interest rates in excess of 20%. Mass. Gen. Laws ch. 271, § 49(d); see also Clean Harbors, Inc. v. John Hancock Life Ins. Co., 833 N.E.2d 611, 625 (Mass. App. Ct. 2005) (requiring usury notice to be on file with state attorney general before disbursal of loan proceeds). But under Massachusetts law, "[t]he appropriate remedy" to a violation of the usury statute

- 22 -

> is arrived at by balancing a number of factors including the importance of the public policy against usury, whether a refusal to enforce the [usurious] term will further that policy, the gravity of the misconduct involved, the materiality of the provision to the rest of the contract, and the impact of the remedy on the parties' rights and duties.

Begelfer v. Najarian, 409 N.E.2d 167, 189 (Mass. 1980). "[D]etermining what relief is appropriate, if any," is a matter up to "the [trial] judge's discretion, under equitable principles." Clean Harbors, 833 N.E.2d at 625 (emphasis supplied) (noting that "the de minimis nature of the delay in filing the [statutorily required usury] notices" may be a factor in determining remedy). Given the discretion that state law affords trial courts in this matter, and given the state trial court's cogent explanation for its determination that Patton Drive was entitled to the full default interest rate on the Guaranteed Notes despite its technical violation of the usury statute, Fustolo has failed to overcome our strong presumption that state court findings, even when not categorically binding, are free of bona fide dispute.

Because the amount of Fustolo's liability on the Guaranteed Notes, which formed separately delineated counts of the state court judgment, is not subject to bona fide dispute, and because there is no injustice in considering Patton Drive's claim on the Guaranteed Notes separately from Patton Drive's claim on the judgment within which its underlying contract claims are

- 23 -

submerged, we find that Patton Drive qualifies as a petitioning creditor and that the bankruptcy court therefore did not err in allowing Patton Drive to join with Patriot and Mayer to initiate involuntary bankruptcy proceedings against Fustolo.

## Conclusion

To summarize:  Patton Drive holds a claim against Fustolo for $2.7 million under the Guaranteed Notes.  Fustolo conceded that he owes the principal due.  His only challenge is to the interest due, and that challenge rests on an entirely unsupported assertion that a state trial court abused its broad equitable discretion in not penalizing a technical timing requirement of state usury law in a commercial transaction.  And while Patton Drive's claim would otherwise be merged into a final judgment, in this context--to Fustolo's benefit otherwise--we do not accord the judgment its customary finality and effect.  Accordingly, we affirm the bankruptcy court's grant of summary judgment to Fustolo's creditors.