**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

STATE OF MONTANA
DEPARTMENT OF REVENUE,
*Appellant,*

v.

TIMOTHY L. BLIXSETH,
*Appellee.*

No. 18-15064

D.C. No.
2:13-cv-01324-JAD

OPINION

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Argued and Submitted August 26, 2019
Seattle, Washington

Filed November 26, 2019

Before: Michael Daly Hawkins, M. Margaret McKeown,
and Jay S. Bybee, Circuit Judges.

Opinion by Judge Hawkins

## SUMMARY[*]

### Bankruptcy

The panel affirmed in part decisions of the bankruptcy and district courts, holding that the Montana Department of Revenue, a creditor holding a claim that was partially disputed as to amount, lacked standing to file an involuntary Chapter 7 bankruptcy petition against a debtor under 11 U.S.C. § 303.  Because all other petitioning creditors had withdrawn from the proceedings, the panel remanded to the bankruptcy court to determine whether the case should be dismissed.

Under 11 U.S.C. § 303(b)(1), a petitioning creditor's claims must not be (1) contingent or (2) "the subject of a bona fide dispute as to liability or amount."  The panel concluded that the Montana Department of Revenue's claim for the 2004 tax year was subject to a bona fide dispute as to amount notwithstanding the debtor's concession that a deduction challenged in an audit was improper.  Joining the First and Fifth Circuits, the panel held that a claim is subject to a bona fide dispute as to amount even if a portion of that claim is undisputed.

### COUNSEL

Lynn H. Butler (argued), Husch Blackwell LLP, Austin, Texas; Mark J. Gardberg, Howard and Howard Attorneys PLLC, Las Vegas, Nevada; for Appellant.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Nathan Andrew Schultz (argued), Goodwin Procter LLP, San Francisco, California; Kevin O'Connell, Kevin O'Connell P.C., Portland, Oregon; Jenny L. Doling and Summer M. Shaw, Doling Shaw & Hanover APC, Palm Desert, California; for Appellee.

## OPINION

HAWKINS, Circuit Judge:

We must determine whether a creditor holding a claim that is partially disputed as to amount has standing to act as a petitioning creditor in an involuntary bankruptcy proceeding under 11 U.S.C. § 303. We join our sister circuits and hold that a claim is subject to a bona fide dispute as to amount within the meaning of 11 U.S.C. § 303(b)(1) even if a portion of that claim is undisputed. We therefore affirm the decisions of the bankruptcy and district courts that the Montana Department of Revenue ("MDOR") lacked standing to file the involuntary Chapter 7 bankruptcy petition against Timothy L. Blixseth. Because all other petitioning creditors have withdrawn from the proceedings, we remand to the bankruptcy court to determine whether this case should be dismissed under 11 U.S.C. § 303(j)(3).

## BACKGROUND

This appeal arises out of the involuntary bankruptcy proceedings commenced against Blixseth, a co-founder of the private ski resort Yellowstone Mountain Club, *see Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1218 (9th Cir. 2014), by several state taxing authorities. MDOR leads the charge.

## I.   *MDOR's Audit.*

MDOR commenced an audit of Blixseth and certain "Related Blixseth Business Entities" for the 2002 through 2006 tax years.  In July 2009, MDOR sent Blixseth a notice of deficiency assessing $56.8 million in taxes, penalties, and interest arising from eight "audit issues."  Relevant to this appeal is the fourth audit issue—a disallowed deduction Blixseth claimed for the environmental penalty payment made by a pass-through entity in the 2004 tax year ("Audit Issue 4").  Audit Issue 4 was not the only adjustment MDOR claimed in connection with the 2004 tax year.  For the 2004 tax year, MDOR assessed additional taxes of $5,505,515; penalties of $990,993; and interest of $2,587,692 for a total assessment of $9,084,100.  By MDOR's calculation, Audit Issue 4 comprises roughly $200,000 of that amount.

In response to the audit, Blixseth worked with MDOR in an informal review process during which he conceded Audit Issue 4, disputed the remaining audit issues, and provided additional information and materials to MDOR.  In light of the additional information Blixseth provided, MDOR adjusted its original audit assessment.  MDOR ultimately assessed additional taxes, penalties, and interest in the amount of $57,017,038 for the 2002 through 2006 tax years.  Blixseth then filed a complaint before the Montana State Tax Appeals Board disputing all audit issues with the exception of Audit Issue 4.  MDOR issued a statement of account, claiming $216,657 owed in connection with Audit Issue 4.

## II.  *The Involuntary Bankruptcy Proceedings.*

In April 2011, while Blixseth's complaint was pending before the Montana State Tax Appeals Board, MDOR, joined by the Idaho State Tax Commission ("Idaho") and the California Franchise Tax Board ("California"), initiated

involuntary bankruptcy proceedings against Blixseth. MDOR, Idaho, and California each asserted claims for unpaid taxes and associated penalties and interest in the amounts of $219,258.00; $1,117,914.00; and $986,957.95, respectively.  MDOR's claim consisted of the taxes, penalties, and interest purportedly flowing from Audit Issue 4.  Just a few weeks after filing the petition, California and Idaho entered into settlement agreements with Blixseth and withdrew as petitioning creditors.  Thereafter, another entity, the Yellowstone Club Liquidating Trust ("Yellowstone"), filed a notice of joinder as a petitioning creditor and asserted a $40,992,210.81 claim based on a judgment it obtained against Blixseth in a separate proceeding.

After some initial motion practice and an appeal regarding venue, Blixseth moved to dismiss the bankruptcy proceedings on the ground that the petitioning creditors' claims were the subject of bona fide disputes.  The bankruptcy court allowed the parties to conduct discovery and submit extensive briefing on the motion.  In response to a discovery request, Blixseth provided a non-exhaustive list of eighteen current creditors and the amounts of their claims as of the petition date.  Separately, a group of eight individuals, the members of an entity that had entered into a settlement agreement involving Blixseth, filed notices of appearance in the bankruptcy and identified themselves as additional creditors of Blixseth.

Following a two-day hearing, the bankruptcy court entered an order converting Blixseth's motion to dismiss into a motion for summary judgment and granting the motion. The bankruptcy court acknowledged that no party contested that the petitioning creditors collectively held unsecured claims exceeding the statutory minimum amount to initiate an involuntary bankruptcy or that their claims were non-

contingent. Thus, the only issues before the court were whether (1) Blixseth had more than eleven creditors on the petition date, necessitating three qualified petitioning creditors; and (2) the petitioning creditors' claims were subject to bona fide disputes as to liability or amount.

The bankruptcy court first determined that Blixseth submitted sufficient evidence to demonstrate he had more than twelve creditors as of the petition date. Consequently, at least three petitioning creditors needed qualifying claims for the involuntary bankruptcy to proceed.

The bankruptcy court then evaluated the petitioning creditors' standing. The court first evaluated "whether any part of a disputed claim could serve as a claim justifying an involuntary bankruptcy." After reviewing the history of § 303(b)(1) and accompanying case law, the bankruptcy court determined that § 303(b)(1) "should be construed to disqualify petitioning claims based on any bona fide dispute as to amount, even if some 'portion' of the claim is undisputed."

With this understanding, the court looked to MDOR, Idaho, California, and Yellowstone's claims. The bankruptcy court determined that Idaho and California's claims were subject to bona fide disputes as to liability or amount. Thus, at least two of the four petitioning creditors lacked standing. To avoid confusion, the court also addressed MDOR and Yellowstone's claims. Looking at MDOR's claim, the bankruptcy court noted that MDOR contended that it had over $50 million in claims against Blixseth, and at the time most of those claims were "disputed[] and disputed intensely." The court acknowledged that "a taxing entity generally has but one claim for each calendar year of a taxpayer's life." MDOR had not shown that it was authorized to create a separate

liability for Audit Issue 4 or if authorized that it took the proper steps to create that separate liability.  Blixseth's remaining liability for the 2004 tax year was disputed, and thus, MDOR's claim was the subject of a bona fide dispute. The bankruptcy court determined that Yellowstone did have standing as a joining, petitioning creditor, but one petitioning creditor was not enough to sustain the petition.  The bankruptcy court therefore granted summary judgment in favor of Blixseth.

## III.    *The District Court Appeal.*

MDOR appealed to the district court, and the district court affirmed the bankruptcy court's grant of summary judgment.  The district court agreed with the bankruptcy court that a holder of a partially disputed claim cannot serve as a petitioning creditor even if the undisputed portion of the claim exceeds the statutory threshold amount.  The district court determined that MDOR and California's claims were subject to bona fide disputes as to amount.  Because two of the four petitioning creditors were ineligible and Blixseth had at least twelve creditors, the district court did not reach the arguments regarding Idaho and Yellowstone's claims.[1] This timely appeal followed.

## STANDARD OF REVIEW

We review de novo a district court's decision on a bankruptcy court appeal.  *Rains v. Flinn (In re Rains)*, 428 F.3d 893, 900 (9th Cir. 2005).  Summary judgment is appropriate where the evidence demonstrates that there are no genuine issues of material fact for trial and the moving

---

[1] Yellowstone withdrew as a petitioning creditor shortly after the district court's decision.

party is entitled to judgment as a matter of law.  *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008).

## DISCUSSION

To commence involuntary bankruptcy proceedings against a debtor, a creditor must be:

> a holder of a claim against [the debtor] that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount . . . [and] such noncontingent, undisputed claims [must] aggregate at least $10,000[2] more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

11 U.S.C.  § 303(b)(1).[3]   Consequently, a petitioning creditor's claim must not be (1) contingent or (2) "the subject of a bona fide dispute as to liability or amount."  *Id.*  Both requirements "aim to prevent creditors from using the threat of an involuntary petition to bully an alleged debtor into settling a speculative or validly disputed debt."  *Chi. Title*

---

[2] On the petition date, the statutory threshold amount was $14,425. *See* Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(a) of the Code, 75 Fed. Reg. 8747, 8748 (Feb. 25, 2010).

[3] The number of petitioning creditors required depends upon the number of creditors a debtor has as of the petition date.  If a debtor has twelve or more creditors, three petitioning creditors are required; if a debtor has less than twelve creditors, only one petitioning creditor is required.  11 U.S.C. § 303(b)(1), (2).

*Ins. Co. v. Seko Inv., Inc. (In re Seko Inv., Inc.)*, 156 F.3d 1005, 1007–08 (9th Cir. 1998).  Here, we must determine whether MDOR's claim for the 2004 tax year is subject to a bona fide dispute as to amount notwithstanding Blixseth's concession that the deduction challenged in Audit Issue 4 was improper.[4]

## I.  *The History of Section 303(b)(1).*

Section 303(b)(1) was enacted originally as part of the Bankruptcy Reform Act of 1978 and in its original form did not require that the creditor's claim be free of a bona fide dispute.   That requirement followed as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333.   The 1984 amendment to § 303(b)(1) addressed the risk of creditors using bankruptcy to force debtors into paying legitimately

---

[4] We disagree with MDOR's assertion that liability stemming from Audit Issue 4 is a freestanding claim.  As a general matter, tax liability accrues on an annual basis and creates a claim each tax year. *Cf. Joye v. Franchise Tax Bd.*, 578 F.3d 1070, 1077 (9th Cir. 2009) (explaining that taxes become payable on annual basis and holding liability for 2000 tax year became payable on January 1, 2001, thus constituting a pre-petition claim in bankruptcy filed March 2001).  On the petition date, all other audit issues regarding Blixseth's 2004 tax liability remained in dispute. MDOR has not identified any clear authority under applicable state laws demonstrating it had the right to seek payment of and assess penalties and interest on a tax adjustment stemming from Audit Issue 4 independently from the remaining adjustments for the 2004 tax year. *See* Mont. Code Ann. § 15-30-2631 (West 2019) (setting forth jeopardy assessment process by which department may issue demand for immediate payment of tax or deficiency in whole or part but which MDOR did not utilize in Blixseth's audit).  Even MDOR's audit supervisor testified that concerns were raised internally regarding the distinction between Blixseth's concession that the deduction was improper and the computation of tax and penalty amounts flowing from the improper deduction.

disputed debts as an alternative to resolving the disputed claims through other means. *See* 130 Cong. Rec. S7618 (daily ed. June 19, 1984) (statement of Sen. Baucus) ("I believe this amendment . . . is necessary to protect the rights of debtors and to prevent misuse of the bankruptcy system as a tool of coercion."). The amendment, however, did not define the phrase "bona fide dispute." *See Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1064 (9th Cir. 2002).

Following the 1984 amendment, "[t]here was considerable question . . . whether disputes as to amount alone were enough to make a petitioning creditor's claim invalid for purposes of filing an involuntary case." 2 Collier on Bankruptcy ¶ 303.11[2] (16th ed. 2019). Some courts interpreted § 303(b) as denying standing to a creditor only where there was a bona fide dispute as to liability; a dispute as to the amount of the claim was not a basis for denying standing. *See, e.g.*, *Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 221 (5th Cir. 1993); *see also Credit Union Liquidity Servs., LLC v. Green Hills Dev. Co. (In re Green Hills Dev. Co.)*, 741 F.3d 651, 656–57 (5th Cir. 2014) (explaining pre-BAPCPA interpretation). Our court held that a dispute as to amount could create a bona fide dispute as to the claim "if [the dispute] takes the total debt below [the statutory threshold]." *Focus Media, Inc. v. Nat'l Broad. Co. (In re Focus Media, Inc.)*, 378 F.3d 916, 926 (9th Cir. 2004). In other words, we rejected the contention that "an uncertainty or dispute as to amounts owed above [the statutory threshold] can create a bona fide dispute as to the entire debt." *Id.*[5]

---

[5] MDOR argues at length that *Focus Media* is still controlling under the test for implicit overruling clarified in *Miller v. Gammie*, 335 F.3d

In 2005, just a few months after our decision in *Focus Media*, Congress amended § 303(b)(1) again as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (2005). The BAPCPA amendment to § 303(b)(1) clarified that a petitioning creditor's claim must not be the subject of a bona fide dispute "as to liability or amount." *Id.* § 1234(a)(1)(A).

Following the 2005 amendment, courts have been evenly split on whether "a dispute as to any portion of a claim, even if some dollar amount would be left undisputed, means there is a bona fide dispute as to the amount of the claim." *Fustolo v. 50 Thomas Patton Drive, LLC*, 816 F.3d 1, 9 (1st Cir. 2016) (internal quotation marks and citation omitted).

Many courts, like the bankruptcy court and district court here, have held that a bona fide dispute as to any amount of a petitioning creditor's claim strips the creditor of standing under § 303(b)(1). *See, e.g.*, *id.* at 10; *In re QDOS, Inc.*, 591 B.R. 843, 848–50 (Bankr. C.D. Cal. 2018); *In re Honolulu Affordable Hous. Partners, LLC*, No. 15-00146, 2015 WL 2203473, at *2 (Bankr. D. Haw. May 7, 2015); *In re Vicor Techs.*, No. 12-39329-EPK, 2013 WL 1397460, at *5–6 (Bankr. S.D. Fla. Apr. 5, 2013); *In re Excavation, Etc., LLC*, No. 09-60953-fra7, 2009 WL 1871682, at *2 (Bankr. D. Or. June 24, 2009); *In re Euro-Am. Lodging Corp.*, 357 B.R. 700, 712 n.8 (Bankr. S.D.N.Y. 2007); *Reg'l Anesthesia Assocs. PC v. PHN Phys. Servs. (In re Reg'l Anesthesia Assocs. PC)*, 360 B.R. 466, 469–70 (Bankr. W.D.

---

889, 900 (9th Cir. 2003) (en banc). *Focus Media* interpreted the prior version of § 303(b)(1). The issue before this court is the meaning of the amendment to § 303(b)(1). Therefore, the issue before us is not whether *Focus Media* has been implicitly overruled by intervening case law but instead one of statutory interpretation.

Pa. 2007); *In re Orlinsky*, No. 06-15417-BKC-RAM, 2007 WL 1240207, at *1 (Bankr. S.D. Fla. Apr. 24, 2007).

Other courts, however, have held that the BAPCPA amendment to § 303(b)(1) merely confirmed that only a material dispute as to amount will strip a creditor of standing. *See, e.g.*, *In re Gen. Aeronautics Corp.*, 594 B.R. 442, 463–66 (Bankr. D. Utah 2018); *In re Clignett*, 567 B.R. 583, 588–89 (Bankr. C.D. Cal. 2017); *In re Stewart*, Nos. 14-03177, 14-03179, 2015 WL 1282971, at *6 (Bankr. S.D. Ala. Mar. 18, 2015); *In re Miller*, 489 B.R. 74, 81–83 (Bankr. E.D. Tenn. 2013); *In re EM Equip., LLC*, 504 B.R. 8, 18 (Bankr. D. Conn. 2013); *In re Tucker*, No. 5:09-bk-914, 2010 WL 4823917, at *6 (Bankr. N.D. W. Va. Nov. 22, 2010); *In re DemirCo Holdings, Inc.*, No. 06-70122, 2006 WL 1663237, at *2–4 (Bankr. C.D. Ill. June 9, 2006); *In re ELRS Loss Mitigation, LLC*, 325 B.R. 604, 626–27 (Bankr. N.D. Okla. 2005); *see also* 2 Collier on Bankruptcy ¶ 303.11[2].

## II. *Interpretation of "Bona Fide Dispute as to . . . Amount."*

"[I]nterpretation of the Bankruptcy Code starts where all such inquiries must begin: with the language of the statute itself." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011) (internal quotation marks omitted). The plain language of § 303(b)(1) encompasses disputes "as to liability or amount" and requires that "such noncontingent, undisputed claims aggregate" the threshold amount. 11 U.S.C. § 303(b)(1). Because a dispute as to liability in a sense renders the entire amount of the claim disputed, the statute's reference to "amount" encompasses a dispute as to less than the entire amount. Furthermore, the statute's plain language does not cabin disputes as to amount to only disputes that drop the amount of a claim below the statutory

threshold. Indeed, the statutory text does not qualify the word "amount" at all. *See Fustolo*, 816 F.3d at 10. We must endeavor to give effect to all words in a statute. *Ransom*, 562 U.S. at 70. And, Congress's inclusion of the word "amount" could be rendered superfluous if a claim validly but partially disputed in amount still qualified as a claim that is not "the subject of a bona fide dispute as to liability *or amount*."

Nevertheless, prior bankruptcy practice is informative, and we "will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Hamilton v. Lanning*, 560 U.S. 505, 516 (2010) (citation omitted). Before the BAPCPA amendment to § 303(b)(1), circuits did not treat disputes as to amount uniformly. *Compare In re Focus Media, Inc.*, 378 F.3d at 926, *with In re Sims*, 994 F.2d at 221. Although the BAPCPA amendment clearly erodes the past practice of excluding amount-based disputes, it does not clearly adopt the materiality requirement imposed by *Focus Media* and related cases.

Two circuit courts have interpreted the post-BAPCPA version of § 303(b)(1), and both followed the plain language of the statute. The First Circuit held that any dispute as to amount disqualifies the claimholder from acting as a petitioning creditor. *See Fustolo*, 816 F.3d at 10 (declining to "read a materiality requirement into section 303" and instead following "the straightforward reading of section 303, which places no qualifiers on the requirement that any asserted claim be free of 'bona fide dispute as to . . . amount'" (alteration in original)). The Fifth Circuit emphasized that through the BAPCPA amendment to § 303(b)(1), "Congress has made clear that a claimholder does not have standing to file an involuntary petition if there

is a 'bona fide dispute as to liability or *amount*' of the claim."
*In re Green Hills Dev. Co.*, 741 F.3d at 660.

We agree with our sister circuits' adherence to the statute's plain meaning and hold that a creditor whose claim is the subject of a bona fide dispute as to amount lacks standing to serve as a petitioning creditor under § 303(b)(1) even if a portion of the claim amount is undisputed.

Contrary to MDOR's contention, interpreting § 303(b)(1)'s inclusion of "amount" to bar all claims disputed in amount, whether partially or fully disputed, does not lead to an absurd result. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004) (explaining that plain meaning controls if it does not lead to absurd result). We recognize that MDOR is not alone in suggesting that treating fully and partially disputed claims alike might lead to anomalous results in some circumstances. A leading treatise posits:

> Why would Congress want to disqualify a creditor whose claim is noncontingent and at least partially *un*disputed? Section 303's requirements regarding type and number of claims are an attempt to balance a debtor's interest in staying out of bankruptcy with the interest of creditors in putting a debtor into bankruptcy. Why shouldn't the undisputed, noncontingent portion of a petitioning creditor's claim count? Why disqualify the creditor in toto? Why effectively bar that creditor's access to the bankruptcy forum?

2 Collier on Bankruptcy ¶ 303.11[2]; *see also In re Gen. Aeronautics Corp.*, 594 B.R. at 465–66 (asserting that allowing a dispute over the threshold amount to qualify as a bona fide dispute as to amount would lead to the absurd

result of a $100 dispute barring a creditor holding a $100,000 claim $99,900 of which was undisputed).

Yet, MDOR's own claim exemplifies why following the plain language is the logical interpretation that gives effect to the statute's basic policy. MDOR initiated an audit of Blixseth and several related entities for the 2002 through 2006 tax years. Blixseth conceded that the deduction challenged by Audit Issue 4 was improper, thus potentially altering his tax liability for the 2004 tax year. By MDOR's calculation, Audit Issue 4 gave rise to $219,258 in additional tax liability, penalties, and interest as of the petition date. In full, however, MDOR claimed more than $9 million in tax liability, penalties, and interest for the 2004 tax year stemming from multiple audit issues. And, as soon as Blixseth conceded the impropriety of the deduction challenged in Audit Issue 4, MDOR sought to leverage an approximately $200,000 concession to collect on a disputed claim totaling more than $9 million along with tens of millions of dollars in additional disputed tax liability. In doing so, MDOR engaged in the very type of conduct that § 303(b)(1)'s "bona fide dispute" limitation seeks to prohibit. *See In re Seko Inv., Inc.*, 156 F.3d at 1007–08.

Ultimately, although a portion of MDOR's claim was undisputed on the petition date, the vast majority of its claim remained disputed. As a result, MDOR's claim was the subject of a bona fide dispute as to amount.

## CONCLUSION

We hold that MDOR's claim was the subject of a bona fide dispute as to amount on the petition date, and, therefore the bankruptcy court and district court correctly concluded that MDOR lacked standing to serve as a petitioning creditor. MDOR also disputes whether Idaho, California,

and Yellowstone's claims may sustain the petition individually or in combination. We do not reach these issues because all other petitioning creditors have withdrawn their participation in the underlying bankruptcy proceedings. Instead, we remand for the bankruptcy court to determine whether this matter should be dismissed for want of prosecution consistent with 11 U.S.C. § 303(j)(3).

**AFFIRMED, in part, and REMANDED with instructions.** Appellant to bear the costs on appeal.