**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 7, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

HOWARD COLLINS,

    Defendant - Appellee.

No. 15-3084
(D.C. No. 2:05-CR-20087-JWL-3)
(D. Kan.)

_____

**ORDER**
_____

Before **HOLMES**, **BALDOCK**, and **MATHESON**, Circuit Judges.
_____

This matter is before the court on the appellee's *Petition for Panel Rehearing*.

Upon consideration, the petition is granted on a limited basis and to the extent of the

changes made in the revised opinion attached to this order. The original panel opinion is

hereby withdrawn, and the clerk is directed to issue the attached revised decision *nunc*

*pro tunc* to February 14, 2017.


Entered for the Court


ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

February 14, 2017

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellant,

v.

HOWARD COLLINS,

     Defendant - Appellee.

No. 15-3084

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:05-CR-20087-JWL-3)**

---

Richard A. Friedman, Attorney, Appellate Section, Criminal Division, United States Department of Justice, Washington, D.C. (James A. Brown, Office of the United States Attorney for the District of Kansas, Topeka, Kansas; Scott C. Rask, Office of the United States Attorney for the District of Kansas, Kansas City, Kansas, with him on the briefs), for Plaintiff-Appellant.

Daniel T. Hansmeier, Appellate Chief, Kansas Federal Public Defender, Kansas City, Kansas (Melody Bannon, Chief Federal Public Defender, Kansas Public Defender, Kansas City, Kansas, with him on the brief), for Defendant-Appellee.

---

Before **HOLMES**, **BALDOCK**, and **MATHESON**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

---

Howard Collins was serving a term of supervised release as part of his sentence for knowingly and intentionally distributing more than five grams of a mixture or substance containing cocaine base (i.e., crack cocaine), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii). His supervised release was revoked after he failed several drug tests. He was reincarcerated and received a new term of supervised release. Upon his release from prison, his supervised release was revoked a second time after he again failed multiple drug tests and failed to participate in a required substance-abuse program. Following his second revocation, the district court sentenced Mr. Collins to twelve months' imprisonment, having determined that the maximum term of imprisonment that it could impose under 18 U.S.C. § 3583(e)(3) was one year. Exercising jurisdiction under 28 U.S.C. § 1291, we reject this application of § 3583(e)(3), **vacate** Mr. Collins's sentence, and **remand** for resentencing.

# I

An undercover agent of the Kansas Bureau of Investigation arranged through an informant to conduct three transactions involving the sale of crack cocaine. On November 6, 2003, the agent purchased 7.11 grams of crack cocaine at a roadside park near Baxter Springs, Kansas. Mr. Collins and the informant were among the passengers in the vehicle from which the agent made the purchase. Following the first transaction, the informant supplied the agent with two telephone numbers to arrange subsequent drug purchases. On November 13,

2

2003, after calling one of the telephone numbers and speaking with Mr. Collins, the agent purchased 4.66 grams of crack cocaine in the parking lot of a shopping mall in Pittsburg, Kansas. On December 9, 2003, after calling both telephone numbers, the agent conducted a third transaction, this time purchasing 5.47 grams of crack cocaine from Mr. Collins and two other males in the shopping mall in Pittsburg. In an interview in November 2005, Mr. Collins recalled selling crack cocaine on at least five other occasions.

On August 17, 2005, Mr. Collins was indicted along with two other men on charges of conspiracy to distribute and possess with intent to distribute more than fifty grams of a mixture or substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii), and three counts of knowingly and intentionally distributing more than five grams of a mixture or substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii). Upon entering into a plea agreement, Mr. Collins was convicted on one count of distribution. The district court imposed a sentence of eighty-four months' imprisonment to be followed by four years of supervised release. Over the course of the next two years, for reasons not material here, the district court reduced Mr. Collins's prison term to sixty months; his supervised release term remained unchanged.

After completing his prison sentence, Mr. Collins failed several drug tests in October 2010 and his supervised release was revoked the following July. As a

result of this revocation, Mr. Collins was reincarcerated for a term of eighteen months and sentenced to a new three-year term of supervised release. Upon his second release from prison, Mr. Collins was found in possession of a controlled substance, failed several drug tests, and was terminated from a substance-abuse treatment program. At a revocation hearing on March 2, 2015, Mr. Collins admitted to these supervised release violations, and the district court revoked his second supervised release term.

Following this second revocation, the district court sentenced Mr. Collins to twelve months' imprisonment to be followed by a two-year term of supervised release. In sentencing Mr. Collins, the district court determined that the statutory maximum term of imprisonment that it could impose under 18 U.S.C. § 3583(e)(3) was one year, believing that it was restricted by the maximum supervised release term that was authorized for the violation forming the basis for (i.e., resulting in) the first revocation of supervised release, rather than the maximum term authorized for the original offense of conviction (i.e., three years). The government timely appealed from the district court's final judgment.

## II

The sole issue the government raises on appeal is whether the district court erred in sentencing Mr. Collins to twelve months' imprisonment under an ostensible one-year statutory maximum based on § 3583(e)(3), which limits reincarceration following revocation of supervised release to the "term of

4

supervised release authorized by statute for *the offense* that resulted in such term

of supervised release," 18 U.S.C. § 3583(e)(3) (emphasis added).  Resolution of

this issue turns on a question of statutory interpretation: in determining the

maximum allowable term of reincarceration following a *second* revocation of

supervised release, does § 3583(e)(3) refer to the original criminal offense for

which the defendant was convicted *or* the subsequent violation of the conditions

of supervised release that resulted in his first revocation?[1]

    To the extent that the government challenges the district court's sentencing

order because the court allegedly failed to apply the correct law—and "to the

extent that determining the 'correct law' requires us to engage in statutory

interpretation—our review is de novo."  *United States v. Burkholder*, 816 F.3d

---

[1]     We have previously identified this open question and declined to answer it.  *See United States v. Lamirand*, 669 F.3d 1091, 1099 n.7 (10th Cir. 2012) ("[F]ollowing the reasoning of [defendant's] argument, the district court would have been obliged to look to those offenses (i.e., the supervised-release violations), instead of his underlying drug-trafficking conviction for purposes of determining . . . the maximum imprisonment terms provided in § 3583(e)(3). . . . We are disinclined, however, to reach the merits of this argument."); *United States v. Hernandez*, 655 F.3d 1193, 1197 (10th Cir. 2011) ("Mr. Hernandez presses this appeal on the express understanding that the term *offense* as used in § 3583(e) refers to his underlying criminal conviction, and that very well may be exactly right.  Indeed, we have previously assumed it is, just as we do today." (citations omitted)).  However, at least one panel of our circuit has affirmed a district court order under § 3583(e)(3) according to the severity of the *original* offense.  *See United States v. Olinger*, 511 F. App'x 816 (10th Cir. 2013); *cf. United States v. Kelley*, 359 F.3d 1302, 1303 n.1 (10th Cir. 2004) (assuming that § 3583(e) refers to defendant's underlying criminal conviction); *United States v. Swenson*, 289 F.3d 676, 677 (10th Cir. 2002) (same), *superseded on other grounds by Hernandez*, 655 F.3d at 1196.

5

607, 611–12 (10th Cir. 2016); *accord United States v. Porter*, 745 F.3d 1035,

1040 (10th Cir. 2014); *United States v. Sturm*, 672 F.3d 891, 897 (10th Cir. 2012)

(en banc); *see also United States v. Nacchio*, 573 F.3d 1062, 1087 (10th Cir.

2009) ("We review questions of statutory interpretation de novo.").

## A

## 1

At the outset, we provide a brief overview of the structure of 18 U.S.C.

§ 3583(e)(3) to clarify the nature of the parties' arguments and our interpretive

inquiry. Section 3583(e)(3) allows the district court to revoke a term of

supervised release upon finding by a preponderance of the evidence that the

defendant has violated the conditions of supervised release. The district court

may then "require the defendant to serve in prison all or part of the term of

supervised release authorized by statute for the offense that resulted in such

term . . . without credit for time previously served." 18 U.S.C. § 3583(e)(3).

However, Congress included a limiting principle in this provision:

> [A] defendant whose term [of supervised release] is revoked
> under this paragraph may not be required to serve on any such
> revocation more than 5 years in prison if *the offense that resulted
> in the term of supervised release* is a class A felony, more than
> 3 years in prison if such offense is a class B felony, more than 2
> years in prison if such offense is a class C or D felony, or more
> than one year in any other case[.]

*Id.* (emphasis added). As these plain terms reveal, the "offense that resulted in"

provision of § 3583(e)(3) operates to limit the maximum term of imprisonment

6

following the revocation of a term of supervised release. The provision is triggered after a defendant's term of supervised release has been revoked.

It is undisputed that this limitation on the maximum term of imprisonment under § 3583(e)(3) relates to the original crime of conviction when a defendant's supervised release term is revoked the *first* time. At Mr. Collins's second supervised release revocation sentencing, however, the government maintained that § 3583(e)(3)'s "offense that resulted in" language refers to the original crime of conviction for the second and all subsequent revocations as well. The district court, however, rejected this argument and instead concluded that, following a *second* revocation of supervised release, the relevant "offense" under § 3583(e)(3) is the violative conduct that gave rise to the first revocation. And the court tacitly reasoned that the maximum authorized term of imprisonment for this conduct was one year because it fell within § 3583(e)(3)'s catchall language—i.e., "any other case"—inasmuch as the conduct did not constitute a class A, B, C, or D felony offense.[2]

If the government's interpretation is correct—*viz.*, if the statutory maximum is based on Mr. Collins's original offense, rather than the violative conduct resulting in his first revocation—then the maximum term of imprisonment that Mr. Collins could serve under subsection (e)(3) is three years,

---

[2]     Indeed, there is no indication in the record that the government ever sought to criminally prosecute Mr. Collins for the violative conduct underlying his first revocation of supervised release.

7

rather than the one-year maximum on which the district court based its ruling.

Put another way, the controlling maximum prison term would be three years for

the class B felony for which he was *first* sentenced. R., Vol. I, at 40 (listing Mr.

Collins's offense of conviction as "distribution of more than five grams of

cocaine base" (capitalization altered)); *see* 21 U.S.C. § 841(b)(1)(B)(iii) (2000)

(restricting term of imprisonment for distribution of "5 grams or more of a

mixture or substance . . . which contains cocaine base" to "not . . . less than 5

years and not more than 40 years");[3] 18 U.S.C. § 3559(a)(2) (classifying an

offense with a maximum term of imprisonment of "twenty-five years or more, as

a Class B felony"). For the reasons set forth below, we agree with the

government's interpretation and hold that, as to not only the first but also second

and subsequent revocations, § 3583(e)(3) imposes a statutory maximum prison

term based on the original criminal offense for which the defendant was

convicted.

**2**

To avoid confusion, we acknowledge at this early juncture that Mr. Collins

not only defends the district court's rationale—which the government attacks on

appeal—but also advances a novel and distinct reading of § 3583(e)(3)'s

"offense" language to uphold his sentence. Like the district court's, this reading

---

[3] The most recent enactment of 21 U.S.C. § 841(b)(1)(B)(iii) penalizes the distribution of "28 grams or more of a mixture . . . which contains cocaine base." 21 U.S.C. § 841(b)(1)(B)(iii) (2012).

rejects the government's focus on the offense of conviction. If we were to adopt it, it would effectively constitute an alternative ground for affirmance. But we do not.

Specifically, in his appellate brief, with regard to second or subsequent revocations, Mr. Collins argues that the term "offense" in subsection (e)(3) of § 3583 refers to *the revocation itself*, rather than the underlying violative conduct that gave rise to the judicial act of revoking supervised release.[4] He contends that

---

[4] Mr. Collins suggests that he advanced this same argument—*viz.*, that the prior revocation itself is the relevant "offense" under subsection (e)(3)—in the district court. We are inclined to disagree, though for reasons noted *infra*, whether he did or not is immaterial to the outcome of this case. The precise contours of Mr. Collins's arguments before the district court are admittedly murky. However, having studied these arguments, we conclude that, insofar as Mr. Collins raised his revocation-as-offense argument, he did so in such a skeletal and enigmatic manner that the district court understandably did not address it. In this regard, in both his revocation memorandum and at the final revocation hearing, Mr. Collins repeatedly and quite explicitly indicated that his position was that the *violative conduct* underlying his first revocation was the "offense that resulted in" his second term of supervised release and this conduct (i.e., "offense") should therefore constitute the basis for computing his maximum term of imprisonment. *See* R., Vol. I, at 87 (Revocation Mem., filed Feb. 25, 2015) ("In the case of a second revocation . . . the 'offense' is not the 'original offense,' but instead is *the offense underlying the first revocation*." (emphasis added)); *id.* at 88 ("[T]he . . . term 'offense,' . . . necessarily encompasses an underlying conviction *as well as* a subsequent *violation* of supervised release." (emphases added)); *see also* R., Vol. II, at 47 (Tr. Final Revocation Hr'g, dated Mar. 2, 2015) (defense counsel stating, "[I]t's the conduct that *results in a violation*; the conduct that results in a conviction that's your offense conduct." (emphasis added)); *id.* at 48–49 (defense counsel arguing that § 3583(e)'s cross-reference to 18 U.S.C. § 3553(a)(1) "has to mean [that a revoking court should consider] the nature and circumstances of the offense underlying the violation"). To be sure, with a clear understanding now on appeal that Mr. Collins is actually seeking consideration of a theory distinct from the district court's rationale—that is, a

(continued...)

his first revocation "resulted in" his second term of supervised release. And

because the statutory maximum term of imprisonment to which he could be

sentenced for his first revocation was three years (based on his original class B

felony offense and the limits imposed by subsection (e)(3)), the revocation itself

"qualified as a Class E felony offense," Aplee.'s Br. at 12; *see* 18 U.S.C. §

3559(a)(5) (classifying as a class E felony "[a]n offense [for which] . . . the

maximum term of imprisonment is . . . less than five years but more than one

---

[4](...continued)
revocation-as-offense theory—we are able to discern stray passages in the district court proceedings that point to an argument based on this theory. *See, e.g.*, *id.*, Vol. I, at 89 ("It is the first *revocation* that must be used for purposes of calculating the statutory maximum term of imprisonment under § 3583(e)(3) . . . ." (emphasis added)); *id.*, Vol. II, at 54 (defense counsel stating, "The offense is not just the underlying offense. It's not just the underlying conviction. It is the revocation.").

However, Mr. Collins never fully developed this revocation-as-offense argument before the district court. More specifically, Mr. Collins's at best cursory references to such an argument certainly were not sufficient to alert the district court to its presence in the sentencing proceeding—especially given the novelty of the argument. Rather, the court reasonably understood Mr. Collins's argument, in light of the language that he used, to be that "in this context [offense] means in essence the violation of the earlier term of supervised release which led to the imposition of the term of supervised release which is now being revoked." *Id.* at 62. And, responding to that argument, the district court "conclu[ded] . . . that [C]ongress considered the offense here to mean the violation which led to the revocation in question." *Id.* at 64–65. It is this interpretation of § 3583(e)(3)—and not Mr. Collins's distinct statutory reading—that forms the basis for the court's sentencing order and constitutes the predicate for the *government's* challenge on appeal, and therefore we focus the bulk of our analysis on it. Ultimately, the distinction between the two arguments is irrelevant, however, because our interpretation of § 3583(e)(3) effectively and necessarily rejects both the district court's and Mr. Collins's interpretation of the statute.

10

year"). And the maximum term of imprisonment that subsection (e)(3) allows for a class E felony is one year. *See* § 3583(e)(3) (listing the maximum imprisonment terms for felony classes A–D, and noting that the maximum term "in any other case" is "one year").

To frame and elucidate our subsequent detailed discussion of the issues presented in this appeal, we reject at the outset as fundamentally misguided Mr. Collins's novel revocation-as-offense argument. It necessarily fails under the same reasoning that we employ *infra* in rejecting the district court's construction of § 3583(e)(3): in short, it is clear to us that Congress did not intend the term "offense" in § 3583(e)(3) to mean anything other than the offense for which a defendant was originally convicted. Furthermore, we are able to reject it with even greater force because Mr. Collins posits a meaning of "offense" that is even more detached from the patent focus of that statutory term—a defendant's culpable conduct—than the district court's (erroneous) interpretation. As we discuss in further detail *infra*, the term "offense" ordinarily contemplates an individual's criminal activity.[5] *See, e.g.*, *Kellogg Brown & Root Servs., Inc. v.*

---

[5] Consistent with the legal principles explicated herein, we take into account every element of § 3583(e)(3)'s phrase "offense that resulted in," and evaluate those elements in their broader statutory context. However, it is beyond peradventure that the term "offense" is a central key to resolving the question before us, because its meaning will necessarily shed light on the class of felony (if any) at issue. And, once that class is identified, the plain terms of § 3583(e)(3) answer the question—*viz.*, specify the maximum term of imprisonment. Consequently, it is both wise and proper to devote considerable
(continued...)

11

*United States, ex rel. Carter*, --- U.S. ----, 135 S. Ct. 1970, 1976 (2015)

(explaining that the "term 'offense' is most commonly used to refer to crimes");

*Offense*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining the term "offense"

as "[a] violation of the law; a crime, often a minor one").  Though flawed, the

district court's statutory construction—which considers (in second or subsequent

revocations) an "offense" to be the defendant's violative conduct that gave rise to

the prior revocation—at least has the virtue of focusing on a *defendant's* culpable

conduct.

By contrast, in arguing that the "offense" is the revocation itself, Mr.

Collins dramatically shifts the lens to the conduct of the *court*, which is

empowered to effect the revocation.  *See* 18 U.S.C. § 3583(e)(3) ("The *court*

may . . . revoke a term of supervised release . . . ." (emphasis added)); *id.*

§ 3583(i) (discussing "[t]he *power of the court* to revoke a term of supervised

release for violation of a condition of supervised release" (emphasis added));

*Parole Revocation*, BLACK'S LAW DICTIONARY, *supra* (defining parole revocation

as "[t]he administrative or judicial act of returning a [defendant] to prison").

More specifically, under Mr. Collins's view, the term "offense" is completely

detached from the underlying individual conduct that resulted in supervised

release: *viz.*, the maximum sentence of imprisonment on a second or successive

---

[5](...continued)
attention to discerning the meaning of the component term "offense."

revocation of supervised release is based not on the defendant's criminal conduct underlying the conviction, nor even on the defendant's violative conduct underlying the prior revocation, but rather on the court's conduct in revoking supervised release. Mr. Collins has not identified any judicial decision that has adopted this novel interpretation of § 3583(e)(3), and we are not aware of any. At bottom, we find it meritless.

In sum, Mr. Collins's revocation-as-offense argument necessarily fails under the same reasoning that we employ *infra* in rejecting the district court's construction of the term "offense" in § 3583(e)(3). And it does so with even greater force because it is detached from the patent focus of that statutory term—the culpable conduct of the defendant. We now explicate our understanding of § 3583(e)(3) relative to the dispute before us.

**3**

Our "primary task in interpreting statutes [is] to determine congressional intent." *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1245 (10th Cir. 2009) (quoting *Russell v. United States*, 551 F.3d 1174, 1178 (10th Cir. 2008)). In doing so, we begin "where all such inquires must begin: with the language of the statute itself." *First Nat'l Bank of Durango v. Woods (In re Woods)*, 743 F.3d 689, 694 (10th Cir. 2014) (quoting *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011)); *see also United States v. West*, 671 F.3d 1195, 1199 (10th Cir. 2012) (stating that "we first and foremost look to the statute's

13

language to ascertain Congressional intent"). "It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)); *cf.* Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 56 (2012) ("[T]he purpose [of a statute] must be derived from the text, not from extrinsic sources such as legislative history or an assumption about the legal drafter's desires."). In other words, "[w]e will look beyond the plain language of a statute *only* if the result is an absurd application of the law." *United States v. Brown*, 529 F.3d 1260, 1265 (10th Cir. 2008); *see also United States v. Sprenger*, 625 F.3d 1305, 1307 (10th Cir. 2010) ("If the terms of the statute are clear and unambiguous, the inquiry ends and we simply give effect to the plain language of the statute." (quoting *Toomer v. City Cab*, 443 F.3d 1191, 1194 (10th Cir. 2006))).

We do, however, construe statutory language within its broader context. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); *accord Kunz v. United Sec. Bank (In re Kunz)*, 489 F.3d 1072, 1077 (10th Cir. 2007). Indeed, "the meaning of statutory language, plain or not,

14

depends on context." *In re Woods*, 743 F.3d at 694 (quoting *United States v. Villa*, 589 F.3d 1334, 1343 (10th Cir. 2009)). "[N]o statute is an island unto itself. We can look around to provide substance and context to a potentially unclear term." *United States v. Brune*, 767 F.3d 1009, 1022 (10th Cir. 2014). In total, "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Salazar v. Butterball, LLC*, 644 F.3d 1130, 1137 (10th Cir. 2011) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

To begin our inquiry, Congress's specific choice of words in § 3583(e)(3)—that is, "the offense that resulted in the term of supervised release"—is noteworthy. The term "offense" traditionally refers to crimes. *See Kellogg*, 135 S. Ct. at 1976 (explaining that the "term 'offense' is most commonly used to refer to crimes"); *see, e.g.*, *Offense*, BLACK'S LAW DICTIONARY, *supra* (defining the term "offense" as "[a] violation of the law; a crime, often a minor one"); *Offense*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1566 (2002) (defining "offense" as "an infraction of law: CRIME, MISDEMEANOR"); *see also* 22 C.J.S. *Criminal Law* § 3, at 4 (1989) ("The terms 'crime,' 'offense,' and 'criminal offense' are all said to be synonymous, and ordinarily used interchangeably. 'Offense' may comprehend every crime and misdemeanor, or may be used in a specific sense as synonymous with 'felony,' or with

15

'misdemeanor,' as the case may be, or as signifying a crime of lesser grade, or an act not indictable, but punishable summarily or by the forfeiture of a penalty.").

The Supreme Court, although noting that "the term 'offense' is sometimes used more broadly" and is "not necessarily synonymous" with the word "crime," affirmatively stated that it has this specific meaning within the context of Title 18—the title at issue here. *Kellogg*, 135 S. Ct. at 1976 (noting that, while the term offense is sometimes used to refer to noncriminal conduct, "that is *not* how the word is used in Title 18" (emphasis added)); *cf. id.* ("Although the term appears hundreds of times in Title 18, neither respondent nor the Solicitor General, appearing as an *amicus* in support of respondent, has been able to find a single provision of that title in which 'offense' is employed to denote a civil violation."). Moreover, the Court noted that when Title 18 was enacted, "the very first provision, what was then 18 U.S.C. § 1, classified all offenses as crimes." *Id.* at 1977. In contrast, violative conduct resulting in the revocation of supervised release—although "often lead[ing] to reimprisonment"—"need not be criminal." *Johnson v. United States*, 529 U.S. 694, 700 (2000).

We are hard-pressed to conclude that Congress intended for the term "offense" in subsection (e)(3)'s phrase "offense that resulted in" to include such violative conduct, which may not even involve a crime. Instead, for reasons detailed further *infra*, we are confident that Congress meant for the term "offense" in that statutory phrase to refer, in all instances, to the *crime* that

16

caused a defendant to be placed on supervised release in the first place—that is, the defendant's *original* crime of conviction. And, consequently, courts should employ that offense in determining the maximum authorized term of imprisonment upon revocation—not only for the first revocation, but also for the *second or subsequent* one.

We are not alone in reaching this conclusion. More specifically, our decision is informed by two of our sibling circuits—the First and Seventh Circuits—which have explicitly held that, upon the revocation of a *subsequent* term of supervised release, the statutory maximum prison sentence under § 3583(e)(3) is based on the original crime of conviction. *See United States v. Ford*, 798 F.3d 655, 663 (7th Cir. 2015) ("The phrase 'the offense that resulted in the term of supervised release' refers to the offense for which the defendant was initially placed on supervised release."); *United States v. Tapia-Escalera*, 356 F.3d 181, 185 (1st Cir. 2004) ("[W]here a second violation of conditions occurs, [the offense that resulted in] language necessarily refers back to the original offense of conviction . . . ."). We join our sibling circuits in concluding that the term "offense" in § 3583(e)(3) refers to the original offense of conviction.

Moreover, two other circuits, in rejecting slightly different arguments raised by defendants challenging prison terms based on successive revocations, have affirmatively stated that the "offense" referred to in § 3583(e)(3) is the offense of conviction. *See United States v. Cunningham*, 800 F.3d 1290, 1292

17

(11th Cir. 2015) ("The 'term of supervised release' identified by § 3583(e)(3) is that 'authorized by statute *for the offense*.' This plainly refers to the underlying criminal offense resulting in conviction."); *United States v. Williams*, 675 F.3d 275, 279 (3d Cir. 2012) ("Subsection (e)(3) refers to the 'term of supervised release authorized by statute *for the offense that resulted in such term of supervised release*.' This language unambiguously sets the maximum prison sentence by reference to the length of supervised release statutorily authorized for the conviction offense . . . .").[6]

We further note that other circuits, while not explicitly addressing the issue before us, have assumed that the statutory maximums in § 3583(e)(3) are set by a defendant's underlying criminal conviction when considering the propriety of a

---

[6] The defendants in *Cunningham* and *Williams* argued that § 3583(h) provides the relevant "term of supervised release authorized by statute for the offense," 18 U.S.C. § 3583(e)(3). *See Cunningham*, 800 F.3d at 1291; *Williams*, 675 F.3d at 279. In other words, they argued that subsection (h) establishes a cap on the length of postrevocation imprisonment under subsection (e)(3). Both courts found this argument at odds with the plain meaning and structure of § 3583, concluding that the length of postrevocation imprisonment is determined by reference to the term of supervised release authorized by statute for the offense of conviction, and therefore is not limited by the supervised release term stemming from any prior violation resulting in revocation (i.e., the term authorized by subsection (h)). *See Cunningham*, 800 F.3d at 1292; *Williams*, 675 F.3d at 279. "Indeed, subsections (b) and (h) establish a 'term of supervised release' for different purposes: subsection (b) defines the term of supervised release for the original offense, and subsection (h) defines the term of a supervised release tail [i.e., the term of supervised release following a term of postrevocation imprisonment]. Subsection (e)(3) clearly fixes the term of post-revocation imprisonment according to the former . . . ." *Williams*, 675 F.3d at 279.

18

sentence of imprisonment following a second (or third) revocation of supervised release. *See United States v. Spencer*, 720 F.3d 363, 370 (D.C. Cir. 2013) (affirming the defendant's two-year prison sentence following second revocation of supervised release for class C felony where defendant had served fourteen-month term for prior revocation); *United States v. Hampton*, 633 F.3d 334, 339 (5th Cir. 2011) (affirming two-years' imprisonment following second revocation and noting that, in the case of a class D felony offense of conviction, "§ 3583(e)(3) imposes a two-year *per-revocation cap* on revocation imprisonment" (emphasis added)); *United States v. Epstein*, 620 F.3d 76, 78 (2d Cir. 2010) (affirming a two-year prison sentence following a second revocation and noting that "18 U.S.C. § 3583 permits a court to impose a maximum sentence of two years for violations of conditions of supervised release for which *the underlying offense* was a class C or D felony" (emphasis added)); *United States v. Knight*, 580 F.3d 933, 936–37 (9th Cir. 2009) (finding that "[u]nder § 3583(e)(3) the maximum term of imprisonment that [the defendant] could receive upon [his third] revocation of . . . supervised release was two years" based on his original class C felony offense of conviction); *United States v. Lewis*, 519 F.3d 822, 825 (8th Cir. 2008) ("Section 3583(e)(3) was in effect in October 2003 when [the defendant] committed the class C felony which produced his first period of supervised release, and its plain language permitted imposition of a prison sentence of up to 2 years for his second revocation . . . ."); *United States v.*

19

*Hager*, 288 F.3d 136, 137 (4th Cir. 2002) (affirming two-year prison term following second revocation, "the maximum available under § 3583(e)(3) for an *underlying* Class D felony" (emphasis added)), *superseded on other grounds by statute*, PROTECT Act, Pub. L. No. 108-21, § 101(1), 117 Stat. 650, 651 (2003), *as recognized in United States v. Ware*, 639 F. App'x 919, 920 (4th Cir. 2016).[7]

Broadening our analytical lens, we turn to related Supreme Court caselaw for guidance; it only reinforces our interpretation of the plain meaning of § 3583(e)(3). Specifically, in *Johnson v. United States*, the Court held that the penalty for violating terms of supervised release "relate[s] to the original offense," 529 U.S. at 701; *see id.* at 699–700 (rejecting the notion that "revocation of supervised release 'imposes punishment for defendants' new offenses for violating the conditions of their supervised release.'" (quoting *United States v. Page*, 131 F.3d 1173, 1176 (6th Cir. 1997))). In other words, the penalty for revocation is an enhancement of the punishment for the original offense, not a punishment for violating supervised release. The principle set forth in *Johnson*

---

[7] A panel of the Sixth Circuit reached a similar conclusion in affirming a sentence following a second revocation of supervised release. The court rejected the defendant's argument that "his previous post-revocation sentence— seven months' imprisonment and twelve months' supervised release—set the outer boundaries for his second revocation proceedings." *United States v. Burrell*, 455 F. App'x 667, 668 (6th Cir. 2012). The panel stated that, "[b]ecause [the defendant's] *underlying conviction* . . . authorized a supervised release period of not less than two years and qualified as a Class D felony, the district court had the post-revocation discretion to sentence [him] to up to two years of imprisonment, 18 U.S.C. § 3583(e)(3)." *Id.* at 669 (emphasis added) (citations omitted).

allows us to draw the inference that *any* reference to an "offense that resulted in the term of supervised release," 18 U.S.C. § 3583(e)(3), is meant to refer to the offense for which the defendant was first sentenced to supervised release.

We find further support in drawing this inference from the "serious constitutional questions" created by "construing revocation and reimprisonment as punishment for the violation of the conditions of supervised release." *Johnson*, 529 U.S. at 700. For instance, treating revocation as punishment for violating the conditions of supervised release may present serious concerns related to the Fifth Amendment prohibition against double jeopardy. In this regard, "[w]here the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense." *Id.*

Moreover, though the violative conduct resulting in a revocation may be criminal, it need only be established by a judge by a preponderance of evidence, instead of by a jury beyond a reasonable doubt. *Compare* 18 U.S.C. § 3583(e)(3) (providing that a court may revoke supervised release and require the defendant to serve a term of imprisonment if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release"), *with In re Winship*, 397 U.S. 358, 364 (1970) (holding that "the Due Process Clause protects the accused against [criminal] conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged").

21

Revocation hearings, therefore, lack the same Sixth Amendment protections accorded a defendant who is the subject of a criminal prosecution, even though the underlying violative conduct may be criminal in nature. *See, e.g.*, *United States v. Granderson*, 511 U.S. 39, 48 (1994) ("[T]he Government prosecuted him for cocaine possession and afforded him the full constitutional protections of a criminal trial, rather than the limited protections of a revocation hearing."); *see also United States v. Meeks*, 25 F.3d 1117, 1121 (2d Cir. 1994) ("[M]ost of the fundamental constitutional procedural protections that are normally applicable to a criminal prosecution are not required for supervised-release proceedings as a matter of constitutional law."), *abrogated on other grounds by Johnson*, 529 U.S. at 711.

However, "[t]reating postrevocation sanctions as part of the penalty for the *initial offense* . . . avoids these [constitutional] difficulties." *Johnson*, 529 U.S. at 700 (emphasis added); *see, e.g.*, *United States v. Wyatt*, 102 F.3d 241, 242 n.1, 244–45 (7th Cir. 1996) (rejecting the defendant's "double jeopardy argument" and noting that it "rests on the mistaken premise that the revocation of his term of supervised release—which was imposed as part of the sentence for his marijuana conviction—constituted a punishment for his possession of firearms"; though his supervised release "was revoked as a result of his possession of firearms," "the proper understanding of a revocation of supervised release is simply that by engaging in prohibited conduct (criminal or not) during the term of supervised

22

release, a defendant triggers a condition that permits *modification of the terms of his original sentence*" (emphasis added)); *Meeks*, 25 F.3d at 1122 (noting, where revocation is interpreted as relating to the initial offense of conviction, that "the defendant may be both punished for the supervised-release violation and prosecuted criminally for the same conduct without implicating principles of double jeopardy").

But these constitutional difficulties are *not* overcome, much less avoided, if we construe the "offense that resulted in" language of § 3583(e)(3) as referring to the violative conduct resulting in revocation. On the contrary, doing so places us squarely at odds with the Fifth and Sixth Amendments. In sum, our interpretation of § 3583(e)(3)—that the "offense that resulted in" language is meant to refer to the crime for which the defendant was first sentenced to supervised release—avoids serious constitutional difficulties.

Interpreting § 3583(e)(3) within the entire statutory scheme of Title 18 further evinces an intention to limit the meaning of "offense" to crimes of conviction. More specifically, it follows from § 3583(a) of Title 18 that the term "offense" in § 3583(e)(3) must refer to the original offense of conviction. *See* 18 U.S.C. § 3583(a) ("The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment . . . ."). Section 3583(a) authorizes supervised release "for a *felony*

23

or a *misdemeanor*," that is, crimes. *Id*. (emphasis added); *see, e.g.*, *Felony*, BLACK'S LAW DICTIONARY, *supra* (defining "felony" as "[a] serious *crime* usu[ally] punishable by imprisonment for more than one year or by death" (emphasis added)); *Misdemeanor*, BLACK'S LAW DICTIONARY, *supra* (defining "misdemeanor" as "[a] *crime* that is less serious than a felony and is usu[ally] punishable by fine, penalty, forfeiture, or confinement (usu[ally] for a brief term) in a place other than prison (such as a county jail)" (emphasis added)). Because many supervised release violations are noncriminal, *see, e.g.*, *Meeks*, 25 F.3d at 1122 (noting the frequency of revocation hearings for conduct that is "not a criminal offense"), and because a term of supervised release is only authorized for crimes (i.e., misdemeanors or felonies) under § 3583(a), it follows that a noncriminal violation of supervised release could not be an "offense" under § 3583(e)(3). In other words, noncriminal violations cannot themselves "result[ ] in the term of supervised release," § 3583(e)(3).

Furthermore, as *Kellogg* indicated, other provisions of Title 18 use the word "offense" to refer to expressly criminal activity. *See, e.g.*, 18 U.S.C. § 16 (defining "crime of violence" to mean an "offense" with certain characteristics); *id.* § 921(a)(33)(A) (defining "misdemeanor crime of domestic violence" to mean an "offense"). The titles of various provisions of the criminal code confirm this interpretation. *See, e.g.*, *id.* § 19 (section titled "Petty offense defined"); *id.* § 24 (section titled "Definitions relating to Federal health care offense"); *id.*

24

§§ 1341–51 (chapter titled "Mail Fraud and Other Fraud Offenses"); *id.*

§§ 3271–72 (chapter titled "Extraterritorial Jurisdiction over Certain Trafficking

in Persons Offenses"). These provisions, along with § 3583(a)'s limitation of

supervised release terms to punishment for felonies or misdemeanors, indicate

that Congress intended to restrict the meaning of the term "offense" throughout

Title 18, and more specifically in § 3583(e)(3), to crimes.

In sum, based on the foregoing, we conclude—as to all supervised release

revocations, including the second one, as here—that § 3583(e)(3) imposes a

statutory maximum prison term based on the *original* criminal offense of

conviction, *not* on the violative conduct resulting in the prior supervised release

revocation. Therefore, the maximum authorized term here is three years, given

that Mr. Collins was originally convicted of a class B felony.

## B

In arguing against this outcome, Mr. Collins employs his novel view that

the "offense that resulted in" language of § 3583(e)(3) imposes a statutory

maximum based on his first revocation itself, which was purportedly the

"offense." He argues that this view conforms to the statutory history of

subsections (e)(3) and (h) of § 3583, as well as subsection (e)'s cross-reference to

18 U.S.C. § 3553(a)(1). The district court relied on similar arguments in finding

that § 3583(e)(3) imposes a statutory maximum based on the violative conduct

25

that gave rise to the prior revocation, *not* on the original crime of conviction. We are not persuaded.

Mr. Collins contends that "the offense that resulted in the term of supervised release" must be referring to his first revocation, rather than his original offense of conviction, because but for his first revocation, he would not have been serving the term of supervised release that was revoked a second time. More specifically, he argues that under § 3583(e)(3), the phrase "resulted in" is referring to actual causation, which must be both "the necessary and sufficient cause of Mr. Collins's second term of supervised release." Aplee.'s Br. at 14–15.

In support of his causation argument, Mr. Collins points to a decision from the Supreme Court—*Burrage v. United States*, --- U.S. ----, 134 S. Ct. 881 (2014)—addressing the causation requirement imposed by 21 U.S.C. § 841(b)(1)(C).[8] In *Burrage*, the Court began with the observation that causation generally "consist[s] of two constituent parts: actual [i.e., but-for] cause and legal [i.e., proximate] cause." *Id.* at 887. Although holding that § 841(b)(1)(C)'s "results from" language "imposes . . . a requirement of actual causality," the

---

[8]     The statutory provision at issue in *Burrage* specifically provides that

> In the case of a controlled substance in schedule I or II, . . . such person shall be sentenced to a term of imprisonment of not more than 20 years and *if death or serious bodily injury results from the use of such substance* shall be sentenced to a term of imprisonment of not less than twenty years or more than life . . . .

21 U.S.C. § 841(b)(1)(C) (emphasis added).

26

Court declined to decide whether a proximate-cause requirement also flows from the statutory phrase. *Id.* at 887. We subsequently held that identical "results from" language in 21 U.S.C. § 841(b)(1)(E) did not embody a proximate-cause requirement. *See Burkholder*, 816 F.3d at 621 ("[Section] 841(b)(1)(E)'s provision that 'death . . . results from the use' of a Schedule III controlled substance requires only proof of but-for causation.").[9]

Mr. Collins contends that the district court's first revocation is the offense that "resulted in" his second term of supervised release because, but for that revocation, the term of supervised release that Mr. Collins ultimately violated would not have existed. If we accept Mr. Collins's argument that § 3583(e)(3)'s use of the phrase "resulted in" refers to his first revocation as the *independently sufficient*, actual cause of his second term of supervised release, we would be forced to overlook *Johnson*. As discussed *supra*, *Johnson* held that "postrevocation penalties *relate to the original offense*," 529 U.S. at 701

---

[9]     Distinct from "actual cause" or "but-for cause," "proximate cause" or "legal cause" means that the cause must be "legally sufficient to result in liability; an act or omission that is considered in law to result in a consequence, so that liability can be imposed on the actor." *Proximate Cause*, BLACK'S LAW DICTIONARY, *supra*. As we recited in *Burkholder*, "proximate cause principles inject a foreseeability element into [a] statute." 816 F.3d at 613 (alteration in original) (quoting *Babbitt v. Sweet Home Chapter of Cmtys. for a Greater Or.*, 515 U.S. 687, 713 (1995) (O'Connor, J., concurring)); *see also In re Antrobus*, 519 F.3d 1123, 1126–27 (10th Cir. 2008) (Tymkovich, J., concurring) (where "the harm must 'proximately' result from the crime," examining the record to discern whether the defendant's "crime was a reasonably foreseeable result of the illegal [conduct]"). Mr. Collins has made an argument only with respect to but-for causation, not proximate causation.

(emphasis added), and are not punishments for the violation of conditions of supervised release (or, as relevant here, for the district court's revocation of a prior term of supervised release). Thus, *Johnson* strongly suggests that the but-for cause here—i.e., the offense that "resulted in" the term of supervised release—must be the offense of conviction. *Id.*

Moreover, it does not logically follow that a but-for analysis necessarily will lead to only the first revocation. The district court's revocation was not *independently* sufficient to warrant Mr. Collins's second term of supervised release. *See Burkholder*, 816 F.3d at 620 n.10 ("An event or condition is *sufficient* if its existence means that another event or condition will occur. An event or condition is *necessary* if, in its absence, another event or condition could not occur."); *see, e.g.*, *United States v. White*, 765 F.3d 1240, 1246 n.4 (10th Cir. 2014) ("The 'based on' clause is but one of two necessary but not sufficient conditions that must be satisfied before a district court is authorized to reduce a defendant's sentence under § 3582(c)(2) . . . ."). In other words, but for Mr. Collins's *original* offense for which he was convicted, he could not have been sentenced to a term of imprisonment or supervised release on his first or *any* *subsequent* revocation. *Burrage*'s reasoning does not artificially limit § 3583(e)(3) to the most recent event in the chain of actual causality. And, as noted, imposing such a limitation here would contradict *Johnson*. Therefore, Mr. Collins's reliance on *Burrage* is misplaced.

28

Nor is Mr. Collins's position helped by § 3583(e)'s cross-reference to the sentencing factors set forth in § 3553(a)(1). As a preliminary matter, under § 3583(e), the court must "consider[ ] the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)" before imposing a prison sentence following the revocation of supervised release. 18 U.S.C. § 3583(e). As relevant here, subsection (a)(1) of § 3553 requires the court to consider "the nature and circumstances of the offense," in the singular; subsection (a)(4)(B) requires the court to consider "the applicable guidelines or policy statements issued by the Sentencing Commission" "in the case of a violation of probation or supervised release."

In an apparent defense of the district court's rationale,[10] Mr. Collins contends that § 3583(e)'s cross-reference to § 3553(a)(1) evinces Congress's intent that the term "offense" in subsection (e)(3)—which is also used in subsection (a)(1)— refers to violations of supervised release with regard to second or subsequent revocations. Mr. Collins's reliance on this cross-reference, however, is misguided for two salient reasons. First, as noted, *Kellogg* instructs that the term "offense," at least as it is used in Title 18, refers to criminal

---

[10]     Notably, Mr. Collins casts aside his revocation-as-offense argument here, and instead contends, in the context of the cross-reference, that "offense" means "the violation conduct." Aplee's Br. at 23; *see id.* ("[T]he district court revoked Mr. Collins's supervised release and imposed punishment based on the nature and circumstances of his violation conduct . . . ."). However, the term "offense" simply cannot sustain the multiple meanings that Mr. Collins assigns it.

29

conduct. *See Kellogg*, 135 S. Ct. at 1976. Therefore, Congress's use of the term

"offense" in subsection (e)(3) of § 3583 *and* subsection (a)(1) of § 3553 must

refer to a crime for which the defendant was convicted, not violative conduct

resulting in revocation. Second, consistent with principles of statutory

interpretation, § 3583(e)'s cross-reference to § 3553(a)(1) should not be

interpreted as referring to the transgression leading to revocation when the

statute's cross-reference to § 3553(a)(4)(B) already does so.[11] *See TRW Inc. v.*

---

[11] Subsection (a)(4) directs courts to consider the policy statements and sentencing ranges laid out in the United States Sentencing Guidelines Manual ("Guidelines" or "U.S.S.G.") in determining the appropriate sentence following a violation of supervised release conditions. *See* 18 U.S.C. § 3553(a)(4)(B) ("The court, in determining the particular sentence to be imposed, shall consider . . . [,] in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . . ."). Those policy statements in turn explicitly direct courts to consider the nature of the defendant's postsentencing, postincarceration, supervised release misconduct in determining the appropriate sanction upon revocation of supervised release. *See* U.S.S.G. Ch. 7, Pt. A. More specifically, these Guidelines policy statements "provide[] for three broad grades of violations," and these grades classify only supervised release misconduct. U.S.S.G. Ch. 7, Pt. A, introductory cmt. (3)(b); *see id.* § 7B1.1(a) (prescribing "three grades of . . . supervised release violations"). And the only variable other than such misconduct (with its associated grade) that affects the advisory sentencing ranges prescribed by the policy statements is the defendant's criminal history at the time of the original criminal sentencing—*viz.*, notably, the ranges are *not* affected by the offense of conviction itself. *See id.* § 7B1.4(a) (Revocation Table) (noting that "[t]he criminal history category is the category applicable at the time the defendant *originally was sentenced* to a term of supervision." (emphasis added)); *see also United States v. McBride*, 633 F.3d 1229, 1232 (10th Cir. 2011) ("These policy statements serve essentially the same role as the now-advisory sentencing guidelines issued by the Commission. They represent an expert assessment of appropriate sentencing practices, often informed by empirical data regarding actual sentencing practices.").

30

*Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))); *see also Elwell v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1307 (10th Cir. 2012) ("[W]e are always hesitant to assume Congress included pointless language in its statutory handiwork."); Scalia & Garner, *supra*, at 174 ("If possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." (footnote omitted)). As § 3583(e) requires consideration of *both* subsection (a)(1) and subsection (a)(4)(B) of § 3553, the requirement can be reasonably interpreted to refer to the offense of conviction (i.e., subsection (a)(1)) and the transgression of revocation (i.e., subsection (a)(4)) *separately*, and we in fact so interpret these provisions.[12] Conversely, construing the cross-reference to

_____

[12] Indeed, the Guidelines clearly distinguish between the statutorily authorized maximum term of postrevocation imprisonment, i.e., the caps set by 18 U.S.C. § 3583(e)(3) based on the offense of conviction, and the advisory range of postrevocation imprisonment that is based on the nature of the supervised release violation resulting in revocation. *See* U.S.S.G. § 7B1.4(b)(1) ("Where the statutorily authorized maximum term of imprisonment that is imposable upon revocation is less than the minimum of the applicable range, the statutorily authorized maximum term shall be substituted for the applicable range[.]"); *see also id.* Ch. 7, Pt. A, introductory cmt. (3)(b) (noting that "the term of imprisonment that may be imposed upon revocation of supervised release is

(continued...)

31

subsection (a)(1) in § 3583(e) to refer to the transgression leading to revocation, rather than the offense of conviction, would create a redundancy.

Finally, Mr. Collins argues that the statutory history of subsections (e)(3) and (h) of § 3583 suggests that *only* subsection (h) refers to the original offense of conviction for purposes of identifying the relevant limiting "term of supervised release."[13] Mr Collins's argument is two-fold. First, he notes that, prior to 1994, the statutory maximum in subsection (e)(3) was based on "the offense for which the person was *convicted*," 18 U.S.C. § 3583(e)(3) (1988) (emphasis added). In

---

[12](...continued)
*limited by statute*" (emphasis added) (citing 18 U.S.C. § 3583(e)(3))); *cf. United States v. Jones*, --- F. App'x ----, No. 16-5036, 2017 WL 405615, at *2 (10th Cir. Jan. 31, 2017) ("A district court may vary from the sentencing range under the Guidelines after conducting an 'individualized assessment' of the facts and considering the relevant 18 U.S.C. § 3553(a) factors." (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007))); *id.* at *3 ("[A]lthough the sentence exceeded the Guidelines range [for his supervised release violation], it fell *within the statutorily permitted ranges* of 48 and 24 months for Mr. Jones's § 924(c) offense and § 922(g)(1) offense [i.e., his offenses of conviction], respectively." (emphasis added)). In other words, under the Guidelines policy statements referenced by 18 U.S.C. § 3553(a)(4)(B), the nature of a defendant's misconduct resulting in supervised release revocation is relevant solely to determining the grade of violation for purposes of calculating the appropriate postrevocation sentencing range under the Guidelines. This is a distinct inquiry from one related to the maximum term of postrevocation imprisonment authorized by statute; that is where the caps of § 3583(e)(3) are implicated.

[13]     We focus here on Mr. Collins's argument as it relates to the facts of his case—that is, in the context of a second revocation of supervised release. Mr. Collins concedes, and indeed it is undisputed, that the "offense that resulted in the term of supervised release," 18 U.S.C. § 3583(e)(3), is the original offense of conviction where the court is revoking supervised release for the first time (i.e., in the context of a first revocation, which is not at issue here).

1994, Congress amended subsection (e)(3) to limit the statutory maximum prison sentence based on the severity of "the offense that resulted in the term of supervised release." 18 U.S.C. § 3583(e)(3) (1994). Mr. Collins contends that this amendment undermines the interpretation that the government advances—*viz.*, that Congress intended for "offense" to refer to the original offense of conviction.

Second, Mr. Collins notes that subsection (h)—which was added to § 3583 in 1994, at the same time as the amendment noted *supra* to subsection (e)(3)—authorizes district courts to impose a new term of postrevocation supervised release, but limits such a term to that "authorized by statute for the offense that resulted in the *original* term of supervised release," which would be the original offense of conviction. 18 U.S.C. § 3583(h) (emphasis added).[14] Subsection (e)(3) does not include the term "original." According to Mr. Collins,

---

[14] Subsection (h) of § 3583 pertains to the district court's authority to sentence a defendant to a new term of supervised release following revocation of a previous term. It provides the following:

> When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the *offense that resulted in the original term of supervised release*, less any term of imprisonment that was imposed upon revocation of supervised release.

18 U.S.C. § 3583(h) (emphasis added).

33

Congress's failure to include the term "original" in its 1994 language amending subsection (e)(3)—i.e, to expressly say "the offense that resulted in the *original* term of supervised release"—at the same time that it added subsection (h), which did include this term, suggests that the "offense" referenced in subsection (e)(3) has a broader meaning than the "original" offense of conviction. We are not persuaded by these arguments.

As a general matter, they are undercut by *Kellogg* insofar as they advocate for "offense" in subsection (e)(3) to mean something other than a criminal conviction. As noted, *Kellogg* held that the term "offense" in Title 18 refers to crimes (i.e., misdemeanors and felonies), *see* 135 S. Ct. at 1976—as opposed to violations of conditions of release or acts of revocation by the court.

More specifically, as to the first argument, prior to 1994, subsection (e)(3) authorized a district court to:

> revoke a term of supervised release, and *require the person to serve in prison all or part of the term of supervised release without credit for time previously served* . . . except that a person whose term is revoked under this paragraph may not be required to serve more than 3 years in prison if the offense *for which the person was convicted* was a Class B felony, or more than 2 years in prison if the offense was a Class C or D felony.

21 U.S.C. § 3583(e)(3) (1988) (emphases added).

Notably, in 1994, Congress added, in all material respects, the same language at issue here—i.e., "the offense that resulted in such term of supervised release"—to the *first* clause of subsection (e)(3) immediately before the words

34

"without credit." In doing so, Congress "expanded the sentencing court's authority, allowing the court to impose a revocation sentence up to the statutory maximum even when the actual sentence of supervised release is shorter." *United States v. Hunt*, 673 F.3d 1289, 1292 (10th Cir. 2012); *see also Johnson*, 529 U.S. at 705 (noting that, prior to the 1994 amendments, subsection (e)(3) did not allow a court to impose a postrevocation prison term "equal to the maximum authorized length of a term of supervised release"); *Spencer*, 720 F.3d at 366 ("The [1994] amendments . . . extended imprisonment upon revocation up to the terms authorized by § 3583(b), i.e., those terms 'authorized by statute for the offense that resulted in such term of supervised release.'"); *Hampton*, 633 F.3d at 339 (describing the 1994 amendment as "removing the *otherwise arguable limitation* that a prison term imposed could never be longer than the term of the revoked supervised release" (emphasis added) (quoting *United States v. Jackson*, 329 F.3d 406, 408 n.4 (5th Cir. 2003), *superseded on other grounds by statute*, PROTECT Act, Pub. L. No. 108-21, § 101(1), 117 Stat. 650, 651 (2003), *as recognized in Hampton*, 633 F.3d at 338)). In other words, the 1994 amendment was implemented to overcome a perceived limitation imposed by the *first* clause of subsection (e)(3): it effectively directed sentencing courts to impose a postrevocation term of imprisonment based on the term of supervised release authorized by statute for the offense of conviction, rather than the term of supervised release set by the original sentencing court.

35

Mr. Collins's interpretation of the amendment ignores this history. He contends that Congress intended the very same language (in all material respects)—i.e., "the offense that resulted in the term of supervised release"—to serve a very different purpose when Congress also added it to *the limiting clause at the end of subsection (e)(3)* in place of the "offense for which the person was convicted." Mr. Collins suggests that, in making this change to the latter clause in subsection (e)(3) Congress intended to broaden the meaning of "offense" from the offense of conviction to the violative conduct resulting in revocation—or, alternatively, the revocation itself—at least in the case of a second or successive revocation of supervised release. However, Mr. Collins offers no support for his position.

On the other hand, as indicated by the citations *supra*, every federal circuit court (including our own) to have considered the addition of this language in the *first* clause of subsection (e)(3) has concluded that it was added to remedy a perceived limitation in the preamendment language by making the offense of conviction the starting point for calculating the maximum authorized term of postrevocation imprisonment: *viz.*, the offense of conviction sets the maximum authorized term of supervised release and, after the 1994 amendment, that term sets the maximum authorized postrevocation term of imprisonment.[15]

---

[15] This history is particularly relevant given that Mr. Collins argues that this amendment has meaning only if it is interpreted to broaden the meaning of

(continued...)

36

In our view, it would be eminently logical to conclude that Congress had the same starting point in mind—that is, the offense of conviction—when it added essentially the *same* language in the limiting clause at the end of the *same* statute in 1994. Indeed, it would be remarkable if this were not the case. *See, e.g.*, Scalia & Garner, *supra*, at 170 (noting that "[a] word or phrase is presumed to bear the same meaning throughout a text"); *cf. Kellogg*, 135 S. Ct. at 1977 ("Fundamental changes in the scope of a statute are not typically accomplished with so subtle a move.").[16] At least one thing is sure: Mr. Collins has not offered any authority to support an alternative reading of the statutory history. Therefore, we reject Mr. Collins's first argument.

---

[15](...continued) "offense" beyond the offense of conviction. *See* Aplee.'s Br. at 28 ("If the government is correct, Congress's amendment to § 3583(e)(3) in 1994 meant nothing."). In reaching this conclusion, however, Mr. Collins ignores the plethora of authority holding otherwise: that is, the 1994 amendments did mean "something," they meant at least that when imposing a postrevocation term of imprisonment, courts were no longer limited by the term of supervised release set by the original sentencing court.

[16] The government did not make this specific argument regarding the statutory history of § 3583, but "we are not limited to the parties' positions on what a statute means, because we review a question of statutory construction *de novo*." *WWC Holding Co. v. Sopkin*, 488 F.3d 1262, 1276 n.10 (10th Cir. 2007); *see also Hankins v. Lyght*, 441 F.3d 96, 104 (2d Cir. 2006) ("We are required to interpret federal statutes as they are written . . . and [therefore] are not bound by parties' [positions]."); *cf. Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.").

As for his second one, we are not persuaded that Congress's inclusion of the term "original" in subsection (h) carries the interpretive significance that Mr. Collins attributes to it: *viz.*, we are not convinced that Congress's failure to include the term "original" in its 1994 language amending subsection (e)(3) when it added subsection (h), suggests that the "offense" referenced in subsection (e)(3) has a broader meaning, as to second or subsequent revocations, than the "original" offense of conviction.

As a general matter, subsection (e)(3) dictates the term of imprisonment that can be imposed following revocation, and subsection (h) dictates the term of supervised release that can be imposed following revocation. As noted, subsection (h) was added to § 3583 in 1994. Prior to this time, courts could not impose an additional term of supervised release after revoking a defendant's original term of supervision. Given the purpose of subsection (h)—i.e., to allow for *new* terms of supervised release in addition to the *original* term—it is not surprising that Congress chose to include the modifier "original" when describing the statutorily authorized term of supervised release that courts should look to when determining the statutory maximum *new* term of supervised release that may be imposed.

To advance his cause, however, Mr. Collins draws on the "general principle of statutory construction that when 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally

38

presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).  However, "[n]o canon of interpretation is absolute," Scalia & Garner, *supra*, at 59, rather "[t]hey are guides that 'need not be conclusive,'" *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001) (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001)).  Moreover, even if we focus on canons, it is notable that Mr. Collins's argument ignores another equally compelling canon of interpretation that cuts against it—*viz.*, "[a] word or phrase is presumed to bear the same meaning throughout a text," Scalia & Garner, *supra*, at 170; *see In re Woods*, 743 F.3d at 697 ("recogniz[ing]" the established interpretive principle that "identical words used in different parts of the same act are intended to have the same meaning" (quoting *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860 (1986))); *see also Brune*, 767 F.3d at 1022 (noting that "no statute is an island unto itself"); *Villa*, 589 F.3d at 1343 (noting that the court must "consider not only the bare meaning of the [text] but also its placement and purpose in the statutory scheme" (alteration in original) (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995))).

Importantly, in this regard, Mr. Collins's interpretation defies this canon because it would necessarily assign a different meaning to the word "offense" as it appears in subsections (e)(3) and (h).  It is clear that, under Title 18, this word has been used to refer to crimes, i.e., a defendant's *criminal conduct* that is

39

proven beyond a reasonable doubt. *See Kellogg*, 135 S. Ct. at 1976. And it is undisputed that it carries this meaning in subsection (h). Thus, adopting the revocation-as-offense theory that Mr. Collins propounds—or even the violative conduct approach of the district court—would not only be contrary to Title 18's statutory scheme, as *Kellogg* defines it, but it also would require us to assign the term "offense" different meanings in subsection (e)(3) and subsection (h). Absent some explicit, compelling grounds for doing so, we will not presume that Congress contemplated such an extraordinary result. *Cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not alter the *fundamental details* of a [statute] in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." (emphasis added)).

In sum, we are convinced that the plain language and statutory context of the "offense that resulted in" phrase in § 3583(e)(3) reveals a clear congressional choice to establish a defendant's offense of conviction as the relevant touchstone for determining the statutory maximum authorized term of imprisonment, following the first *or* any subsequent revocation.

## C

We thus hold that the statutory maximum prison sentence under § 3583(e)(3) for a defendant who, like Mr. Collins, has violated a second or subsequent term of supervised release is based on the severity of the *first* offense for which he was sentenced to supervised release (i.e., the offense of conviction).

40

Therefore, the district court must resentence Mr. Collins using as its touchstone the three-year statutory maximum for his offense of conviction (i.e., a class B felony).[17]

## III

For the foregoing reasons, we **VACATE** Mr. Collins's sentence and **REMAND** for resentencing consistent with this opinion.

---

[17] According to Federal Bureau of Prisons records, Mr. Collins was released from prison on February 5, 2016. At that time, he still had to complete a two-year term of supervised release. It is important to highlight that, as we read controlling precedent, our instruction to the district court to resentence Mr. Collins does not present any double-jeopardy concerns. The Double Jeopardy Clause prohibits "sentence adjustments that upset a defendant's legitimate 'expectation of finality in his sentence.'" *Warnick v. Booher*, 425 F.3d 842, 847 (10th Cir. 2005) (quoting *United States v. DiFrancesco*, 449 U.S. 117, 136 (1980)). But this rule is subject to at least two caveats: (1) "[T]here can be no reasonable expectation of finality when a statute gives the government a right to appeal—at least not until expiration of the time for appeal to be taken," *United States v. Earley*, 816 F.2d 1428, 1433 (10th Cir. 1987) (interpreting *DiFrancesco*); *accord United States v. Smith*, 929 F.2d 1453, 1457 (10th Cir. 1991) ("[A] criminal defendant whose sentence is appealable by the government under a statutory provision allowing for such an appeal, remains under the jurisdiction of the courts and can acquire no legitimate expectation in the finality of his original sentence, at least not until the time for appeal has expired."); and (2) "A defendant cannot acquire a legitimate expectation of finality in a sentence which is illegal, because such a sentence remains subject to modification." *United States v. Rourke*, 984 F.2d 1063, 1066 (10th Cir. 1992). Taken together, these provisions allow us to conclude, with the Ninth Circuit, that "[t]here can be no expectation of finality in sentences that are illegal and that were under challenge by the government." *United States v. Arrellano-Rios*, 799 F.2d 520, 524 (9th Cir. 1986). We have apparently not addressed a situation like this, where a district court is directed to resentence an individual already released from the imprisonment portion of his sentence. Nonetheless, we are confident in light of controlling precedent that Mr. Collins has not acquired a legitimate expectation of finality in his sentence. After all, he still must serve out the supervised release portion of his sentence. Therefore we deem this disposition appropriate.

41